UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICKIE VLADO,

                              Plaintiff/Counter-Defendant,

-against-

CMFG LIFE INSURANCE COMPANY,

                              Defendant/Counter-Claimant.

23-CV-3234 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

      Plaintiff/Counter-Defendant Nickie Vlado ("Vlado" or "Plaintiff") moves to dismiss the counterclaim and strike the first, second, third, fourth and ninth affirmative defenses set forth in the pleading filed by Defendant/Counter-Claimant CMFG Life Insurance Company ("CMFG" or "Defendant"). For the reasons stated herein, Vlado's motion is GRANTED in part and DENIED in part. The Court hereby strikes the fourth affirmative defense as to Count I of the Complaint, but in all other respects DENIES the motion.

## BACKGROUND

      Plaintiff brings this action to recover death benefits under a life insurance policy (the "Policy") that CMFG issued in 2018 on the life of her mother, decedent Sally Green (the "Insured" or "Green"). ECF No. 1 ("Compl.") at 2–4. On August 25, 2018, CMFG received an application (the "Application") for a $300,000 term life policy on the life of the Insured. ECF No. 11 ("Answer") at 10–11. CMFG issued the Policy on the same day. *Id*. at 12. Plaintiff, the Insured's daughter, was named as the sole beneficiary under the Policy. *Id*. at 6. The Policy included the following provision (at § 8.02) concerning incontestability:

> This policy is incontestable after it has been in force during the Insured's lifetime for two years from the effective date or reinstatement date. Statements made in the application or reinstatement application will not be used by us to void your

> policy or challenge a claim, unless the statement is material, is contained in your application that is attached to your policy, and within the contestable period.
>
> After this 2-year period, we cannot contest coverage except for: a.) Non-payment of premiums; or b.) Fraud in the procurement of the policy or reinstated policy, if permitted by applicable law in the state where the policy is delivered.

ECF No. 11-1 at 10. All the premiums on the Policy were paid through the time of the Insured's death. Answer at 4. Green died on December 26, 2022, over four years after the issuance of the Policy. *Id*. at 3. Soon thereafter, Vlado submitted a notice of claim for the Policy's death benefit. *Id*. at 12. CMFG then conducted a claim investigation. *Id*. CMFG determined that the Policy and claim for benefits were "the product of insurance fraud." *Id*. CMFG determined that Green was not associated with the phone number or email address listed on the Application and did not live at the address listed on the Application. *Id*. CMFG found that electronic data indicated the Application was completed more than 60 miles away from the address listed on the Application. *Id*. at 13. CMFG determined that the Application appeared to contain fraudulent misrepresentations regarding Green's medical history and insurability, including that Green had not used tobacco or nicotine products in the last twelve months when she appeared to have, in fact, been a lifelong smoker. *Id*. at 13. CMFG concluded that the Insured "did not complete the application for the Policy or consent to the issuance of the Policy and was unaware of the Policy's existence." *Id*. at 3. CMFG alleges that Vlado or her agents, acting as an "imposter," fraudulently applied for the Policy in the name of Green to "profit from the Insured's death." *Id*. at 13. Based on its investigation, CMFG denied Vlado's claim to the benefits of the Policy. *Id*. at 3.

On April 18, 2023, Vlado filed a complaint against CMFG seeking damages for breach of contract stemming from CMFG's denial of Vlado's claim (Count I). Compl. at 2–3. Plaintiff also seeks a declaratory judgment that the policy is valid and injunctive relief compelling CMFG to

pay the death benefit under the Policy to Vlado (Count II). *Id*. at 3–4. On June 7, 2023, CMFG answered Vlado's complaint, pleading affirmative defenses that (1) someone other than the Insured completed the Application, procuring the Policy without the Insured's knowledge and consent, and that the Application contained fraudulent and material misrepresentations; (2) Plaintiff fails to state a claim upon which relief can be granted; (3) Plaintiff's claims are barred due to material misrepresentations that render the policy void; (4) Plaintiff's claims are barred by the doctrine of unclean hands; (5) there was a superseding or intervening cause for Plaintiff's alleged damages; (6) misconduct of third parties was the proximate cause of and/or contributed to any damages; (7) Plaintiff fails to establish a basis for attorneys' fees or extra-contractual damages or costs; (8) CMFG acted in good faith; and (9) Plaintiff committed a fraud against CMFG. Answer at 7–9. CMFG seeks a judgment declaring the Policy void and asserts a counterclaim against Vlado seeking monetary damages pursuant to the New Jersey Insurance Fraud Prevention Act ("IFPA"). *Id*. at 13–14. On June 30, 2023, Vlado filed the instant motion (the "Motion") to dismiss CMFG's counterclaim (the "Counterclaim") and strike CMFG's first, second, third, fourth and ninth affirmative defenses. ECF No. 12.

## LEGAL STANDARD

The Court sets forth the standard for both the motion to strike affirmative defenses and the motion to dismiss a counterclaim.

### I. Motion to Strike Affirmative Defenses

"An affirmative defense is an assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true." *Tradewinds Airlines, Inc. v. Soros*, No. 08-CV-5901 (JFK), 2013 WL 6669422, at *2 (S.D.N.Y. Dec. 17, 2013) (internal quotation marks and citation omitted). Under Rule 12(f) of the Federal Rules of Civil

3

Procedure, the Court may strike any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike "is not intended to furnish an opportunity for the determination of disputed and substantial questions of law." *Cnty. Vanlines Inc. v. Experian Info. Sols., Inc.*, 205 F.R.D. 148, 153 (S.D.N.Y. 2002) (internal citation omitted). Motions to strike affirmative defenses are "generally disfavored and granted only if there is strong reason to do so." *Holland v. Chase Bank USA, N.A.*, 475 F. Supp. 3d 272, 275 (S.D.N.Y. 2020) (internal quotation marks and citation omitted); *see also FRA S. p. A. v. Surg-O-Flex of Am., Inc.*, 415 F. Supp. 421, 427 (S.D.N.Y. 1976) ("Unless it is clear that the portion of the pleading has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendant, the [pleading] should remain intact.").

A plaintiff may prevail on such a motion where (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense. *GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 96–99 (2d Cir. 2019). Regarding the first prong, the Second Circuit has clarified that "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense." *Id.* at 98. Under this standard, a defendant must support its affirmative defenses with "some factual allegations to make them plausible." *Id.* Regarding the second prong, an affirmative defense, regardless of how well-pleaded, should nonetheless "be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *Id*. at 98. Regarding the third prong, a "factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation." *Id*.

**II.      Motion to Dismiss Counterclaim**

A motion to dismiss a counterclaim for failure to state a claim upon which relief can be granted is evaluated under the same standard as a motion to dismiss a claim in a complaint. *GEOMC*, 918 F.3d at 99. When considering such a motion, the court must accept as true all well-pleaded factual allegations and must draw all reasonable inferences in favor of the counterclaimant. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (per curiam); *see also Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407 (NG), 2022 WL 1665453, at *3 (E.D.N.Y. May 25, 2022)."Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). To survive a motion to dismiss, a counterclaim must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *See id*. (internal citation omitted).

## DISCUSSION

The Court first considers which state's substantive law governs the instant motion. After determining that New Jersey law applies, the Court concludes that New Jersey's incontestability statute does not bar the defenses CMFG seeks to assert here, but that CMFG may not assert its unclean hands defense to Count I in this action. Lastly, the Court finds that CMFG may assert its counterclaim.

**I.    New Jersey Law Applies**

The Policy provides that fraud in the procurement of the contract is a basis for CMFG to contest coverage "if permitted by applicable law in the state where the policy is delivered." ECF No. 11-1 at 10. For purposes of the Motion, the parties do not dispute that New Jersey law applies. ECF No. 13 ("Pl. Mem.") at 5; ECF No. 16 ("Def. Mem.") at 1; Answer at 12. Accordingly, the Court may accept the agreement of the parties without engaging in further

choice of law analysis. *See Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 203 n.7 (2d Cir. 1998); *Phila. Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP*, 379 F. Supp. 2d 442, 452 n.4 (S.D.N.Y. 2005). Thus, the Court will apply New Jersey law in considering the Motion.

Vlado submits that "the contestability laws of New Jersey and New York are functionally equivalent with the [sic] respect to the relevant issues here." Pl. Mem. at 5 n.1. However, choice of law is more consequential than Vlado avers. *See AEI Life, LLC v. Lincoln Benefit Life Co.*, 225 F. Supp. 3d 136, 148 (E.D.N.Y. 2016), *aff'd on other grounds*, 892 F.3d 126 (2d Cir. 2018) ("A conflict in law exists; the law on exceptions to incontestability clauses in life insurance contracts is different in New York and New Jersey."). The Court in *AEI Life* found that "[u]nder New York law, allegations of fraud in the procurement of the policy do not enable an insurer to circumvent the two-year incontestability rule." *Id*. at 149 (internal citations omitted). "*But* unlike New York law, notwithstanding an incontestability clause in the insurance contract, under New Jersey law '*an insurer may deny a claim* if the insured committed *fraud in the policy application*.'" *Id*. at 146 (emphasis in original) (quoting *Ledley v. William Penn Life Ins. Co.*, 651 A.2d 92, 95 (N.J. 1995); *see also Johnson v. Metro. Life Ins. Co.*, 913 N.Y.S.2d 44, 45–46 (App. Div. 2010) ("There indeed appears to be a conflict between the [laws of incontestability] of the two states.") (citing *Ledley*). As described in more detail below, this difference is fatal to Plaintiff's motion.

**II.     New Jersey Law of Incontestability Does Not Bar the Defenses Here**

The first, second, third and ninth affirmative defenses (the "Fraud Defenses") and the Counterclaim, all of which Vlado seeks to strike or dismiss, hinge on CMFG's argument that fraud-based claims and defenses survive the two-year contestable period. Pl. Mem. at 5. Similarly, Vlado asserts that both the Fraud Defenses and Counterclaim fail as a matter of law because they are barred by New Jersey incontestability law. *Id*. As discussed below, the Court

concludes that New Jersey law appears to permit the Fraud Defenses and Counterclaim. The fourth affirmative defense (unclean hands) will be addressed separately. *See infra* section III.

### A. New Jersey Law Likely Permits a Fraud Defense to Incontestability

The Court discusses in turn New Jersey's incontestability statute, relevant decisions of the Supreme Court of New Jersey, the IFPA and developments in case law related to exceptions to incontestability.

#### 1. The New Jersey Incontestability Statute (N.J.S. § 17B:25-4)

By statute, New Jersey requires all life insurance policies to contain a provision that the policy "shall be incontestable, except for nonpayment of premiums, after it has been in force during the lifetime of the insured for a period of 2 years from its date of issue." N.J.S. § 17B:25-4 ("17B:25-4"). New Jersey mandates the inclusion of incontestability clauses in life insurance policies "as a matter of public policy." *Mitchell v. Banner Life Ins. Co.*, No. 08-CV-5984 (JLL), 2011 WL 5878378, at *4 (D.N.J. Nov. 22, 2011). The purpose of an incontestability clause is to "give the insured a sense of security after the stated period elapses." *Paul Revere Life Ins. Co. v. Haas*, 644 A.2d 1098, 1102 (N.J. 1994) (quoting *Strawbridge v. New York Life Ins. Co.*, 504 F. Supp. 824, 829 (D.N.J. 1980)). By establishing a two-year contestability period, "the Legislature balanced the interests of the insurer in rescinding a fraudulently-obtained policy with those of the insured in security of coverage." *Mass. Mut. Life Ins. Co. v. Manzo*, 584 A.2d 190, 194 (N.J. 1990). As a policy matter, the operation of incontestability clauses akin to statutes of limitations "create[s] incentives for insurers to challenge questionable policies in a timely manner, rather than continue to collect premiums and complain only when called upon to pay." *Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, 208 A.3d 839, 846 (N.J. 2019) (internal quotation marks and citation omitted).

### 2. Fraud Exception to Incontestability (*Ledley*)

Vlado refers to 17B:25-4 as a "bright-line" rule, Pl. Mem. at 5, 6, 9, 13, 16, 17, 18, 20, 21 and 22, and submits that 17B:25-4 permits no exception for fraud, Pl. Mem. at 8. "Incontestability clauses, however, are not a bar to all defenses." *Sun Life*, 208 A.3d at 846. The Supreme Court of New Jersey has unequivocally stated that "[e]ven after the expiration of the contestability period, an insurer may deny a claim if the insured committed fraud in the policy application." *Ledley*, 651 A.2d at 95 (citing *Haas*, 644 A.2d 1098).

Vlado asks the Court to disregard *Ledley* as flawed dicta and bad law. *See* Pl. Mem at 6, 8–9, 18–23. Two courts have noted that *Ledley* possibly misapplied *Haas*, but both were ultimately persuaded that *Ledley* likely represents the law of New Jersey. In *Lincoln Nat. Life Ins. Co. v. Schwarz*, the District of New Jersey held that "[w]hile Defendants' argument that the *Ledley* court misread *Haas* has some merit . . . the New Jersey Supreme Court's statement in *Ledley*—that an insurer is permitted to rescind an insurance policy after the two-year contestability period if the insured committed fraud in the policy application—persuades this Court that Lincoln has adequately made out a claim . . . ." No. 09-CV-3361 (FLW), 2010 WL 3283550, at *11 (D.N.J. Aug. 18, 2010). Similarly, in *Am. Nat. Ins. Co. v. Conestoga Settlement Tr.*, the Court of Appeals of Texas, San Antonio held that "[a]lthough it can be argued that the statement made by the New Jersey Supreme Court [in *Ledley*] was mere dicta, dicta that possibly misapplied prior case law, it most likely represents the law of . . . New Jersey given the state's policy under the Insurance Fraud Prevention Act . . . ." 442 S.W.3d 589, 597 (Tex. App. 2014).

The Court finds that Vlado's "attempt to dispose of the significance of *Ledley* is unavailing." *Schwarz*, 2010 WL 3283550, at *11. "When faced with an unsettled interpretation of state law," a federal court must carefully "predict how the state's highest court would resolve

the uncertainty or ambiguity." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 142 (2d Cir. 2021) (internal citation and quotation marks omitted). The instant case is not one where the "state's highest court has not spoken on an issue," *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013), and as such, the Court declines to engage in needless speculation. The District of New Jersey was persuaded similarly in *Schwarz*:

> We do not need to indulge at this point in an elaborate prediction of what New Jersey law will do with a claim of legal fraud in the face of an incontestability clause because the 1995 New Jersey Supreme Court in the *Ledley* case, albeit in dicta, but dicta from the highest court in the state, with a[n] unassailable voice of authority stated unequivocally, "Even after the expiration of the contestability period an insurer may deny a claim if the insured committed fraud in the policy application," in the context of a case involving a life insurance policy, dicta only because that policy had not become incontestable until suit.

2010 WL 3283550, at *10 (internal citation omitted). Dicta from a state's highest court is persuasive authority in determining how that court would likely rule. *See United States v. Jones*, 43 F.4th 94, 104 (2d Cir. 2022); *see also Bounkhoun v. Barnes*, No. 15-CV-631 (RJA), 2018 WL 1805552, at *4 (W.D.N.Y. Apr. 17, 2018) (statements by a state's highest court, "though perhaps technically dictum, provide evidence of how the [state's highest court] would decide [the] issue") (internal citation and quotation marks omitted). It is unnecessary to engage in involved speculation regarding how a state's highest court would likely rule when it has already spoken unambiguously on the issue, albeit in dicta. The Court is persuaded that the Supreme Court of New Jersey would agree with its own dicta from *Ledley*.

### 3. STOLI Exception to Incontestability (*Sun Life*)

Vlado argues that *Sun Life* renders *Ledley* bad law. Pl. Mem. at 6. The Court is again unpersuaded. In 2019, the New Jersey Supreme Court held in *Sun Life* that stranger initiated life insurance ("STOLI") policies are contrary to public policy, and thus an incontestability provision does not bar an insurer's challenge to such a policy. 208 A.3d at 851. A STOLI policy is one

9

procured for the benefit of a third party with "no insurable interest" in the life of the insured. *See* N.J.S. § 17B:30B-18. The *Sun Life* court found STOLI policies contrary to public policy because they "effectively allow strangers to wager on human lives." 208 A.3d at 841. The Court reasoned, "[i]f a policy never came into effect, neither did its incontestability clause; the clause thus cannot stand in the way of a claim that the policy violated public policy because it lacked an insurable interest." *Id*. at 851. Given that Vlado is the Insured's daughter, there is no argument that she lacked an insurable interest such that the Policy was a STOLI policy. *See* Pl. Mem. at 12.

Vlado argues that *Sun Life* "nullifies CMFG's affirmative defenses," because the logic of *Sun Life* cannot be squared with *Ledley*. Pl. Mem. at 17, 20. The Court disagrees. *Sun Life* and *Ledley* indicate that New Jersey considers STOLI policies and fraud in the policy application as violations of public policy that justify an exception to 17B:25-4.

The other recent cases that Vlado says run counter to *Ledley*, *see* Pl. Mem. at 16–17, do not address recission of a life insurance policy where, as here, the insured survived the contestability period and the policy included a provision allowing the insurer to contest the policy at any time based on fraud. Recent decisions applying New Jersey law to factual postures akin to this one continue to follow the clear word of *Ledley*. *See, e.g.*, *Mitchell*, 2011 WL 5878378, at *6–7 (finding under New Jersey law that material misrepresentations in life insurance application warranted recission of the policy after contestability period); *Johnson*, 79 A.D.3d at 453 (finding under New Jersey law that a defendant may "include a fraud defense and counterclaim asserting that the insured decedent knowingly provided false and misleading information on the applications regarding the decedent's medical history, even though defendant raised this defense outside the two-year contestability period"). The Court is not persuaded that the Supreme Court of New Jersey has silently abandoned its unambiguous *Ledley* dicta.

### 4. Insurance Fraud Prevention Act (IFPA)

The conclusion that *Ledley* remains good law is strengthened by the IFPA, which the New Jersey Legislature enacted in 1983 "to confront aggressively the problem of insurance fraud in New Jersey by . . . requiring the restitution of fraudulently obtained insurance benefits, and reducing the amount of premium dollars used to pay fraudulent claims." N.J.S. § 17:33A-2. The Supreme Court of New Jersey has recognized in discussing the IFPA that "[i]nsurance fraud is a problem of massive proportions that currently results in substantial and unnecessary costs to the general public in the form of increased rates." *Merin v. Maglaki*, 599 A.2d 1256, 1259 (N.J. 1992). Accordingly, courts "must construe the [IFPA]'s provisions liberally to accomplish the Legislature's broad remedial goals." *Liberty Mut. Ins. Co. v. Land*, 892 A.2d 1240, 1246 (N.J. 2006).

*Ledley* is consistent with the purpose of the IFPA in preventing false or misleading statements in insurance applications. *See Schwarz*, 2010 WL 3283550, at *9–10 (finding that the IFPA evinced a shift in New Jersey law toward a fraud exception to incontestability); *Ashkenazi v. Lincoln Nat. Life Ins. Co.*, No. 08-CV-3235 (ENV), 2009 WL 1346394, at *4–5 (E.D.N.Y. May 13, 2009) (finding that the IFPA strengthened the argument that New Jersey permits a defense of fraud in the application even after expiration of contestability period); *Johnson*, 79 A.D.3d at 453 (finding it "consistent with the IFPA" to allow a defendant to plead a "fraud defense and counterclaim asserting that the insured decedent knowingly provided false and misleading information on the applications regarding the decedent's medical history, even though defendant raised this defense outside the two-year contestability period"); *Conestoga Settlement Tr.*, 442 S.W.3d at 597 ("[*Ledley*] most likely represents the law of . . . New Jersey given the state's policy under the Insurance Fraud Prevention Act . . . ."). Considering *Ledley* along with

the broad policy purposes of the IFPA indicates that New Jersey law most probably permits a fraud defense to incontestability. The IFPA also allows insurers to bring claims for damages stemming from statutory violations, which is discussed below in relation to CMFG's Counterclaim. *See infra* section IV.

### 5.  Other Exceptions to Incontestability

While New Jersey state courts have not opined on the *Ledley* dicta, trends in federal and out-of-state case law strengthen the conclusion that it likely represents the law of New Jersey. The District of New Jersey has noted that "in response to instances of insurance fraud, there has recently been a significant shift in case law in both New York and New Jersey creating certain exceptions to the incontestability of life insurance policies after the expiration of the two-year period of contestability." *Schwarz*, 2010 WL 3283550, at *9; *see also Settlement Funding, LLC v. AXA Equitable Life Ins. Co.*, No. 06-CV-5743 (HB), 2010 WL 3825735, at *4 n.1 (S.D.N.Y. Sept. 30, 2010) (collecting recent cases finding that "the incontestability clause will not preclude a challenge by the insurer" when "the facts surrounding the creation and issuance of an insurance policy fail to demonstrate that a proper contract was entered into . . . ."). As noted above, the recent cases that Vlado says support an incontestability rule without any exception for fraud are not on point. *See supra* section II(A)(3).

One such exception to incontestability is the so-called "imposter defense," which CMFG also seeks to raise here. Jurisdictions recognizing this defense generally allow rescission of a policy after the contestability period if the policy was procured by someone impersonating the insured in order to deceive the insurance company into issuing the policy. *See, e.g.*, *New York Life Ins. Co. v. Mitchell*, 528 P.3d 1269, 1279 (Wash. 2023) (holding under Washington law that "an insurance policy may be contested after the two-year period if there is evidence that someone

other than the insured signed the application, using the name of the insured, without legal authority to do so and without the insured's consent."); *Halberstam v. United Stated Life Ins. Co. in City of New York*, 945 N.Y.S.2d 513, 516 (Sup. Ct. 2012) (holding under New York law that "[w]here an imposter signs the application for a policy, the named insured is in fact a stranger to the contract, and does not have the benefit of the incontestability clause contained in the policy"); *Mass. Mut. Ins. Co. v. Mitchell*, 859 F. Supp. 2d 865, 870 (S.D. Tex. 2012) (holding under Texas law that "[i]f the insured never made any application to the association for insurance, either by making the application herself, or authorizing another to do so for her, then there was never a contract between the insured and the insurer and the [incontestability statute] could not have application at all") (quoting *Logan v. Tex. Mut. Life Ins. Assoc.*, 51 S.W.2d 288, 292 (Tex. 1932)); *Unity Mut. Life Ins. Co. v. Moses*, 621 F. Supp. 13, 16 (E.D. Pa. 1985), *aff'd*, 780 F.2d 1017 (3d Cir. 1985) (holding that Pennsylvania law provides an exception to incontestability "where the insurance company can prove that an imposter was used to deceive the insurance company into issuing the policy").

In jurisdictions where recognized, the imposter defense is rooted in the long-recognized principle of contract law that "where a man, pretending to be some one else, goes in person to another and induces him to make a contract," there is no contract formed between the imposter and the party being duped. *Strawbridge*, 504 F. Supp. at 830 (quoting *Maslin v. Columbian Nat'l Life Ins. Co.*, 3 F. Supp. 368, 370 (S.D.N.Y. 1932)). Cases applying the imposter defense to contests of life insurance policies commonly involve deceit of the insurance company by means of an impersonator sitting for the insured's medical examination. *See, e.g.*, *id*. (imposter defense validly raised where "an imposter, not the named insured . . . showed up at the medical examination"); *Maslin*, 3 F. Supp. at 370 (imposter defense applicable where "a healthy man

13

impersonated a diseased [named insured] and took the medical examination under the name of [the named insured] . . . "). The imposter defense avoids penalizing an insurer deceived by a fraudulent scheme that circumvents reasonable investigatory measures. *See Moses*, 621 F. Supp. at 17–18.

It is an open question of law whether New Jersey recognizes the imposter defense to incontestability. Several courts have predicted that it does. The Court in *Strawbridge* found under New Jersey law that the incontestability clause in a life insurance policy precluded an insurer's defense based upon absence of a contract. 504 F. Supp. at 830. However, the Court held that the incontestability clause likely did not preclude an imposter defense, finding "it is a well established principle of insurance law that the [incontestability clause] does not bar [proof of imposture]." *Id*. Accordingly, the Court concluded that "[t]his rationale does not conflict with the interpretation of the incontestability clause found in the New Jersey cases" and that it was "confident that a New Jersey court would follow it if confronted with the issue." *Id*. Citing *Ledley,* the Eleventh Circuit similarly observed, "it seems obvious that New Jersey law would also recognize the 'imposter defense' . . . ." *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1237 (11th Cir. 1995).

Having already determined that the Supreme Court of New Jersey would likely follow its clear *Ledley* dicta, the Court declines to speculate whether it would also recognize the imposter defense if presented with the issue. It is unnecessary to make such a prediction where the word of *Ledley* is already dispositive of Vlado's motion. *See infra* section II(B). Nonetheless, the trend in case law toward recognizing limited exceptions to incontestability, including the imposter defense, gives the Court further confidence that the Supreme Court of New Jersey would not abandon its *Ledley* dicta if confronted with this issue.

### B. Application of New Jersey Law of Incontestability

Having determined that *Ledley* is likely the law of New Jersey, the Court considers whether CMFG has pled its Fraud Defenses sufficiently to survive a motion to strike an affirmative defense. "Under New Jersey law, the rescission of an insurance policy must be sought through proving legal fraud, as opposed to equitable fraud, if rescission is sought after the contestability period, which is usually two years after the contract/policy has been in force." *Conseco Life Ins. Co. v. Smith*, No. 11-CV-3716 (SDW), 2013 WL 3285065, at *6 (D.N.J. June 26, 2013); *see also Manzo*, 584 A.2d at 193 (finding that legal fraud, but not equitable fraud, is "available to the insurer as a grounds [sic] for rescission after the expiration of the period of contestability"). In distinguishing between legal and equitable fraud, the Supreme Court of New Jersey has explained:

> A misrepresentation amounting to actual legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment. The elements of scienter, that is, knowledge of the falsity and an intention to obtain an undue advantage therefrom, are not essential if plaintiff seeks to prove that a misrepresentation constituted only equitable fraud. Thus, whatever would be fraudulent at law will be so in equity; but the equitable doctrine goes farther and includes instances of fraudulent misrepresentations which do not exist in the law.

*Bonnco Petrol, Inc. v. Epstein*, 560 A.2d 655, 660 (N.J. 1989) (internal citations and quotation marks omitted). Under New Jersey law, "[i]n order to rescind an insurance policy based on legal fraud, an insurer must prove that: (1) the applicant made misrepresentations on the insurance application; (2) the misrepresentations were material; (3) the misrepresentations were made with the intention that the insurer would rely on them; and (4) the insurer did rely on the misrepresentations to its detriment." *Am. Gen. Life Ins. Co. v. Countrywide Home Loans*, No. 6-CV-4015 (JHR), 2007 WL 2317068, at *4 (D.N.J. Aug. 9, 2007) (internal citation omitted). "A

15

misrepresentation is material if it 'naturally and reasonably influenced the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium.'" *TIG Ins. Co. v. Privilege Care Mktg., Inc.*, No. 3-CV-3747 (JBS), 2005 WL 994581, at *5 (D.N.J. Apr. 27, 2005) (quoting *Manzo*, 584 A.2d at 196).

CMFG's defenses clearly meet the threshold for legal fraud. CMFG's allegations, taken as true, establish that Vlado or her agents submitted the Application without the knowledge or consent of the Insured and knowingly misrepresented crucial aspects of the Insured's health condition, including representing that the Insured had not used tobacco or nicotine products in the last twelve months when she was, in fact, a lifelong smoker. CMFG issued the Policy based on its reliance upon these misrepresentations, as Plaintiff intended. If it had been aware of these false statements, or that the Insured did not complete the Application or otherwise consent to its submission, CMFG would not have issued the Policy. *See* Answer at 7–8. Accordingly, CMFG has sufficiently pled legal fraud and "has adequately made out a claim that the expiration of the [Policy's Incontestability Clause does] not bar" its recission of the Policy. *Schwarz*, 2010 WL 3283550, at *11 (finding that insurer "identified material misrepresentations that would defeat the expiration of an incontestability clause to the extent necessary to survive a motion to dismiss . . . ."); *see also Countrywide Home Loans*, 2007 WL 2317068, at *5 (finding that misrepresentations regarding the insured's history of smoking and other health conditions justified recission of life insurance policy based on legal fraud).

The Court is satisfied that, at a minimum, there is a "question of law which might allow the defense to succeed," which requires the Court to deny Vlado's motion to strike the first, second, third and ninth affirmative defenses. *GEOMC*, 918 F.3d at 96 (internal citation omitted).

Because application of *Ledley* is dispositive, the Court need not determine whether New Jersey recognizes the imposter defense and, if so, whether CMFG has pled it sufficiently.

### III.     Unclean Hands Defense Is Barred as to Count I

Vlado also moves to strike the fourth affirmative defense (unclean hands). Neither party addresses this issue in its briefing. At oral argument before the Court on August 9, 2023, counsel for CMFG explained that this defense is based on the same facts as its other affirmative defenses, namely, that Vlado or her agents fraudulently applied for the Policy without the knowledge or consent or the Insured, and fully aware that the Application contained materially false representations regarding, *inter alia*, the health of the Insured. As such, CMFG submits that Vlado should not be allowed to profit from such alleged bad acts.

Unclean hands is an equitable doctrine requiring that a "suitor in equity must come into court with clean hands . . . ." *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, No. 20-CV-7959 (JMV), 2021 WL 1712528, at *5 (D.N.J. Apr. 30, 2021) (quoting *Borough of Princeton v. Bd. of Chosen Freeholders*, 777 A.2d 19, 32 (N.J. 2001)). "The doctrine is discretionary on the part of the court and may be invoked when it appears that the claimant itself has engaged in misconduct connected with the relief it seeks." *Ameritas Life Ins. Corp. v. Wilmington Tr., N.A.*, No. 19-CV-18713 (KM), 2022 WL 4596718, at *5 (D.N.J. Sept. 30, 2022). "It is well settled that unclean hands is an equitable remedy and is not an available defense to claims for monetary relief." *Starland v. Fusari*, No. 10-CV-4930 (JLL), 2013 WL 12149123, at *11 (D.N.J. Nov. 15, 2013) (internal citation and quotation marks omitted).

The Court cannot conclude at this early juncture that "there is no question of law" that might allow an unclean hands defense to succeed with respect to Count II (Declaratory and Equitable Relief). *GEOMC*, 918 F.3d at 96. However, since unclean hands is not a valid defense

to claims for monetary relief, the court strikes the fourth affirmative defense as to Count I (Breach of Contract).

## IV. CMFG Properly Asserts Its Counterclaim (IFPA)

CMFG asserts a Counterclaim under the IFPA seeking compensatory damages. Specifically, Defendant argues that Vlado violated Section 17:33A-4(a)(4)(b) by knowingly making false or misleading statements concerning facts material to an insurance application and Section 17:33A-4(c) by knowingly benefitting from the proceeds derived from violating the IFPA. Answer at 13–14.

The IFPA allows an insurance company that has been damaged due to a violation of the IFPA to bring a civil action for compensatory damages. N.J.S. § 17:33A-7a. The IFPA requires "much less thorough pleading" than claims for common law fraud. *Schwarz*, 2010 WL 3283550, at \*16. "Unlike common law fraud, proof of fraud under the IFPA does not require proof of reliance on the false statement or resultant damages, nor proof of intent to deceive." *Id*. (internal citations and quotation marks omitted). The elements to bring a claim under the IFPA are (1) knowledge, (2) falsity and (3) materiality. *State Farm Guar. Ins. Co. v. Tri-Cnty. Chiropractic & Rehab. Ctr., P.C.*, No. 22-CV-4852 (ES), 2023 WL 4362748, at \*9 (D.N.J. July 6, 2023). Because claims under the IFPA sound in fraud, they are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Id*. at \*11. Rule 9(b) states that when "alleging fraud . . . a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

Vlado does not attack CMFG's Counterclaim for lacking sufficient particularity. Vlado argues only that the Counterclaim fails as a matter of law because the affirmative defenses barred by the incontestability clause cannot be repackaged as a counterclaim. Pl. Mem. at 23–24. The Court determined that New Jersey law likely permits a fraud defense to incontestability, and thus

denied Vlado's motion to strike the Fraud Defenses. Accordingly, Vlado's motion to dismiss the Counterclaim is denied on the same basis. *See Johnson*, 79 A.D.3d at 453 (finding that defendant may plead a counterclaim under the IFPA because New Jersey incontestability law did not preclude a fraud defense).

## CONCLUSION

For the reasons set forth above, Vlado's motion to strike is GRANTED only as it pertains to the fourth affirmative defense with respect to Count I. Vlado's motion to strike the fourth affirmative defense is DENIED with respect to Count II. Vlado's motion to strike the first, second, third and ninth affirmative defenses and its motion to dismiss the Counterclaim are DENIED in their entirety. The Clerk of the Court is directed to terminate ECF No. 12.

Dated: August 29, 2023
New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge