**MEMO ENDORSED**

August 25, 2023

**VIA ECF**

Jessica G. L. Clarke, United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1040
New York, NY 10007

                Re:  *Vlado v. CMFG Life Insurance Company,* **Index No. 23 Civ. 3234**

Judge Clarke:

      The parties respectfully request that the Court issue an order regarding a discovery dispute over Plaintiff Nickie Vlado's request for documents concerning the file[1] for a life insurance policy Defendant CMFG Life Insurance Company ("CMFG") issued on the life of Frank Vlado, Plaintiff's father (the "Vlado File").  Undersigned counsel for Plaintiff and CMFG's counsel, Eric Au, communicated extensively about Plaintiff's request and CMFG's objection, among other things, including email correspondence and two telephonic meet and confers (on July 21 and August 21, 2023).  Notwithstanding the parties' efforts, the discovery dispute regarding the Vlado File has not been resolved, thereby necessitating this letter pursuant to this Court's Rules.

    *A.  Plaintiff's Position: CMFG's File on the Vlado Policy Must be Produced in its Entirety*

      As CMFG has repeatedly set forth and reiterates below (*see infra* at 4), its defenses and counterclaim in this action are premised on the contention that the Policy at issue in this case was procured without the consent of the Insured (Sally Green), Plaintiff's mother.[2]  As described in the following paragraphs, the Vlado File is highly probative of this contention, and, indeed, may include evidence directly refuting CMFG's claim that the Insured did not consent to her Policy. Moreover, CMFG does not and cannot cite any burden or prejudice associated with producing the Vlado File, which it has apparently already gathered and which – if the Company's file on the (Green) Policy serves as any guide – amounts to less than 350 pages.  Given its relevance and the absence of any countervailing prejudice, the File should be produced in its entirety.

      An extensive common nexus of fact links the CMFG policy on the life of Frank Vlado (the "Vlado Policy") to the Policy on the life of Sally Green and compels disclosure of the complete Vlado File.  Frank Valdo was the husband of Sally Green, and the couple applied for their CMFG life insurance policies on the same day, naming their daughter, Plaintiff, as their beneficiary.  The application for the Vlado Policy – already produced by Plaintiff in discovery (*see* Exhibit A) – not only confirms the concurrent filing of the applications, it also demonstrates that both applications set forth the same physical address (1909 Nottingham Way) in their respective contact information

---

[1]  CMFG has agreed to produce the life insurance policy, including the application, insuring the life of Frank Vlado.

[2]  As Plaintiff was the Insured's daughter, and not a stranger, it is unclear (and CMFG has never explained) why a fraud with respect to the Insured's consent would be necessary in the first place.

1

Hon. Jessica G. L. Clarke
August 25, 2023
Page 2

fields. (*Compare* Exhibit A and Exhibit B ((Green) Application).)[3] Not surprisingly, as confirmed by CMFG's representations below, both applications were also submitted from the same device.[4] Given this, the circumstances concerning the completion of both applications are inextricably linked and, accordingly, CMFG's file with respect to the Vlado Policy will necessarily include evidence that is probative with respect to the (Green) Policy.

In particular, and critically, Plaintiff's understanding is that, after Frank Vlado passed away – during the contestability period on his policy – **CMFG conducted a full investigation concerning the validity of his policy, which entailed, among other things, direct input from both Plaintiff and the Insured.** Evidence of that investigation and outreach would be set forth in the Vlado File and is directly relevant here in multiple respects, including but not limited to: (a) shedding light on the Insured's general awareness of the policies that were concurrently issued on her and her husband's life; (b) shedding light on the circumstances surrounding the application for the Frank Vlado Policy, and, by extension, the Application here; (c) shedding light on the extent

---

[3] While CMFG attempts to make much of the fact that it has obtained discovery indicating that the Insured did not have a lease agreement for the 1909 Nottingham Way address (*see infra*, at n. 6), Plaintiff has never contended otherwise, and the Application reasonably can be read to authorize applicants to list an effective address rather than a permanent home address. Even so, CMFG now argues that the contact information provided was not effective, but rather was a ruse, designed to conceal the Application's alleged submission by a third-party. Yet, as an initial matter, the alleged concealment here in fact openly set forth the name of the third-party (Cynthia Petro) that assisted the Insured with the Application. *See* Ex. B (Email Address). Equally important, given that CMFG has not even *alleged* that it attempted to contact the Insured about her consent, its arguments concerning an alleged ruse are entirely counterfactual and, therefore, ineffectual.

[4] CMFG's discussion of the parties' separate dispute concerning other insurance applications apparently submitted from the same device (*infra*, at 3-4) is misleading and incomplete. In support of its counterclaim for fraud, CMFG's pleadings in this action cited the submission of eight additional applications submitted from the same device as the Insured's Application. Subsequent disclosures of CMFG's investigation notes regarding Plaintiff's claim for benefits demonstrated that each of these other applications was submitted on behalf of a stranger to the Insured and on dates that did not coincide with the date of the Application. By letter dated July 7, 2023, Plaintiff explained to CMFG that, if the Company sought to expand the scope of this action to cover eight other applications, the complete files on those policies should be produced so that Plaintiff could test whether and how they evidenced fraud. (Ex. D at 3.) CMFG originally refused to produce any documents, but, following oral argument before this Court on August 9, it agreed to produce the referenced applications and any policies issued on them. Still, it refused to produce any further materials concerning the applications that would allow Plaintiff to confirm anything other than the fact of their submission. (On August 17, CMFG abruptly disclosed that it intended to produce not just the eight applications referenced in its pleadings and productions, but as many as thirty or more applications.) To the extent that CMFG merely intends, through the disclosure of these additional materials, to adduce evidence of the submission of multiple applications from the same device, Plaintiff has no objection to CMFG's proposed plan of disclosure and does not anticipate escalating this dispute. However, if CMFG wishes to challenge the responses in these additional applications or the consent of their named insureds, this issue will require the Court's attention.

to which CMFG generally recognized Plaintiff as a valid contact and representative for her parents during its investigation; (d) disclosing communications between CMFG and Plaintiff and (e) identifying witnesses to the parties' communications. Discovery concerning these issues is obviously and vitally important to testing CMFG's allegations concerning lack of consent.[5]

Indeed, given the significance of the Vlado File, even before the commencement of this action, Plaintiff's counsel expressly directed CMFG's counsel to review the File in the hope that it would eliminate the need for litigation. Presumably, CMFG did so at that time or shortly thereafter, and, indeed, CMFG's counsel has indicated on at least one call that the File has been gathered. Once discovery commenced, Plaintiff promptly demanded production of the File. However, CMFG objected on grounds of relevance, proportionality, and overbreadth (*see* Exhibit C, at Request for Production No.1 and Interrogatory No. 3). Plaintiff thereafter expressly referenced the File as the principal piece of outstanding discovery in this action (Exhibit D, at 1-2), but CMFG made clear that, absent Court intervention, it would not produce the File. Even a cursory review of the authorities CMFG cites to support its position here reveals that its cases are entirely inapposite: none address discovery concerning policies that were concurrently submitted and in which the only issue in dispute was the manner of, and consent for, the submissions. The Vlado File is highly probative of that issue. Absent a Court ruling vindicating Plaintiff's previously submitted arguments that CMFG's allegation of lack of consent is barred under New Jersey's incontestability law (*see* ECF Nos. 13, 17), Plaintiff must adduce all available evidence regarding the Insured's consent. The Vlado File clearly constitutes such evidence, and CMFG must produce it.

### B. Defendant's Position: The Frank Vlado File is Irrelevant

Despite alleging that "CMFG's strategy in this action is to convert a straightforward claim for death benefits on a fully paid life insurance policy into a costly scorched-earth litigation concerning the veracity of every statement made in an application that CMFG received nearly five years ago[,]" (D.E. 17 at 4) Plaintiff now seeks to expand this case into minitrials regarding other policies and applications, beginning with the Frank Vlado Policy. The Court should deny Plaintiff's requested discovery and limit the record to relevant evidence.

---

[5] CMFG's arguments also reference medical records that CMFG contends contradict the responses set forth in the Application. S*ee infra,* n. 6. While Plaintiff vigorously disputes CMFG's characterization of the evidence, it bears noting both that (a) this has nothing to do with the present dispute concerning the Vlado File, and (b) even assuming *arguendo* that the Application contained a misstatement about the Insured's health, this would say nothing about the Insured's consent to the Application. Instead, this argument is a naked attempt to utilize CMFG's (deficient) allegations invoking the imposter defense to upend a century of New Jersey incontestability law precluding belated claims of life insurance fraud. *See*, *e.g.*, *Massachusetts Mut. Life Ins. Co. v Manzo*, 122 N.J. 104, 112 (1991) ("Through limiting the time period in which insurance companies could contest life insurance contracts, the Legislature balanced the interests of the insurer in rescinding a fraudulently-obtained policy with those of the insured in security of coverage.").

Hon. Jessica G. L. Clarke
August 25, 2023
Page 4

This case concerns CMFG's determination that a $300,000 CMFG life insurance policy on the life of Sally Green (the "Policy") was fraudulently procured by an impostor.[6] Plaintiff is in possession of CMFG's file for the Policy and therefore knows that it does not contain a single reference to Frank Vlado or the Frank Vlado Policy, yet Plaintiff demanded discovery of the Frank Vlado Policy and all other insurance policies that were applied for from the same iPhone that was used to apply for the Policy. CMFG initially objected to Plaintiff's demand on the grounds that the policies and applications were irrelevant. That is, while one iPhone—that apparently does not belong to the Insured, Plaintiff, or anyone Plaintiff knows[7]—was used to apply for the Policy, the Frank Vlado Policy, and more than two dozen other life insurance policies on other insureds, this case does not concern those other policies.

At the August 9 hearing on Plaintiff's motion to dismiss and to strike, Plaintiff's counsel brought CMFG's objection to the Court's attention, and CMFG's counsel explained the objection. After the Court emphasized that it would not make any discovery rulings absent the submission of a joint letter, the Court indicated that the other *applications and policies* procured using the same iPhone may be discoverable because CMFG referenced those applications and policies in its counterclaim (D.E. 11 at 12). CMFG therefore agreed to produce the applications and policies, including the Frank Vlado Policy and application.

The number of applications on other insureds' lives that were submitted from the same iPhone will be a fact following CMFG's production, but discovery of each policy file, beginning with the Vlado File, is not relevant to the parties' claims and defenses or proportional to the needs of the case. As such, Courts throughout the country have denied similar discovery demands to Plaintiff's. CMFG requests that this Court do the same.

Indeed, under the law, files for policies other than the policy at issue are irrelevant and not subject to discovery if the insurer did not "rely upon that information to make the determination to pay or deny the claims." *Utica Mutual Ins. Co. v. Clearwater Ins. Co.*, No. 6:13-CV-01178, 2015 WL 12777360, at *2 (N.D.N.Y. Jan. 20, 2015); *see also Principal Life Ins. v. Mosberg*, No, 09-cv-02571, (E.D.N.Y.) (Nov. 10, 2009 Transcript of Oral Hearing (ECF Docket No. 25-7 at 4-5) (holding that other policy applications issued by the insurer, which were not at issue in the case, were not subject to discovery)). That is because how an insurer "investigated claims or determined coverage in other cases has little bearing on whether this claim is covered." *Dade Cty. Fed. Credit Union v. Cumis Ins. Soc'y, Inc*., Case No.10-23711, 2011 WL 13100237, at *2 (S.D. Fla. Aug. 1, 2011); *see also Cunningham v. Std. Fire Ins. Co.*, No. 07-cv-02538, 2008 WL 2902621, at *9 (D.

---

[6] Documents produced in response to CMFG's subpoenas support CMFG's determination that the Policy was fraudulently procured. For example, the owner of the property listed as the Insured's address on the application produced lease agreements confirming that the Insured (and/or Plaintiff) did not live at the property, and the nursing home that the insured resided at produced records noting that the Insured suffered several brain aneurysms and had COPD, among other medical conditions, none of which were disclosed on the application.

[7] Plaintiff has objected to CMFG's interrogatory and request for documents regarding whether the phone number listed on the application for the Policy belonged to the Insured. The parties are continuing to attempt to resolve this dispute without Court involvement.

Colo. July 24, 2008) (denying discovery of other claims); *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co.*, No. 2:06-cv-443, 2007 WL 3376831, at *5 (S.D. Ohio Nov. 8, 2007) (same); *Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 89 (D.D.C. 2005) (same); *Clark Equip. Co. v. Liberty Mutual Ins. Co.*, No. 89C-OC-173, 1995 WL 867344, at *2 (Del. Super. Ct. April 21, 1995) ("the manner in which the claims of other policyholders are handled would create extended minitrials.").

Here, there is no evidence indicating that CMFG considered the Frank Vlado *Policy*, let alone the Vlado *File*, when determining that the Policy was fraudulent. Plaintiff nevertheless claims that the Vlado File is relevant for the following reasons: (1) the Vlado File will demonstrate the Insured's state of mind that policies were being concurrently issued and "shed light on the circumstances surrounding the application for the Frank Vlado Policy" (*see supra* at 2-3); (2) Plaintiff's designation as the beneficiary of the Frank Vlado Policy and the Policy is evidence that CMFG recognized Plaintiff as a valid contact for her parents (*id.* at 3); (3) evidence of a purported outreach from CMFG to the Insured during the investigation of *Plaintiff's* claim for benefits under the Frank Vlado policy is evidence "of the insured's awareness of the policies concurrently issued on her and her husband's life" (*id.*); and (4) the Frank Vlado file will identify witnesses needed to present evidence regarding the parties' communications. *Id.* None of the proffered reasons support discovery of the Vlado File or any other policy file.

To the extent evidence is needed regarding reasons (1)-(2), the applications that CMFG has agreed to produce are all that is needed. The applications will confirm that the Insured could not have been aware "of the policies that were concurrently issued on her and her husband's life" because a separate application for life insurance on someone other than Sally Green or Frank Vlado was submitted from the iPhone after the Sally Green application and before the Frank Vlado Policy. The applications will also confirm that CMFG believed that two parents could name a child as the beneficiary of their life insurance policies, which is an issue that CMFG was not aware was in dispute. The Vlado File would be irrelevant to both "issues."

Reasons (3)-(4) are irrelevant and premised on baseless assumptions, most notably that CMFG knew how to contact Sally Green. Plaintiff has not alleged or produced evidence supporting that any of the contact information on the application for the Policy was Sally Green's, and Plaintiff—not Sally Green—was identified as the beneficiary on the application for the Frank Vlado Policy. The notion that CMFG knew how to and in fact contacted Sally Green regarding an insurance policy to which Ms. Green was not a party lacks foundation. Most importantly, even if Sally Green was aware of the Frank Vlado Policy and spoke with CMFG regarding it, that would not be relevant to whether Sally Green was aware of the policy on her life.

Because the Vlado File and the files for every other policy that was applied for from the same iPhone are irrelevant to whether the Policy was applied for with Sally Green's knowledge and consent, the Court should affirm CMFG's objections to Plaintiff's requested discovery and deny any motion to compel.

Respectfully submitted,

By:     /s/ Eyal Dror
Eyal Dror
TRIEF & OLK
750 Third Avenue, Suite 2902
New York, New York 10017
Tel: (212) 486-6060
Email: edror@triefandolk.com

*Attorneys for Nickie Vlado*

    /s/ Eric Au
Eric Au
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103
Tel.: (215) 988-2700
Eric.Au@faegredrinker.com

*Attorneys for CMFG*

Plaintiff's request to compel the production of the Vlado File, as described herein, is GRANTED. CMFG contends that the policy at issue in this case was procured by fraud and/or by an imposter. The policy that is part of the Vlado File was allegedly procured on the same day, by the same person, and in the same manner as the policy in this case. The Vlado File appears to include CMFG's investigation into the circumstances of the validity of the Vlado File's policy and how it was procured. The Vlado File is therefore highly relevant to CMFG's contentions that the policy here was procured by fraud and by an imposter and to Plaintiff's defense against those allegations. CMFG also failed to demonstrate any burden in producing these documents.

CMFG's concern of a mini-trial is unwarranted. The mere production of documents in discovery does not mean that this evidence will ultimately be admitted at trial or that the Court will permit mini-trials about separate policies unconnected to the allegations in this case. At this point, however, the Court finds that there is reason to believe that the Vlado File is relevant to CMFG's fraud allegations, and the Court finds that the production of this information is proportional to the needs of this case. *See* Fed. R. Civ. Pro. 26(b)(1).

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge

Dated: August 29, 2023
       New York, New York