UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICKIE VLADO,

Plaintiff/Counter-Defendant,

v.

CMFG LIFE INSURANCE COMPANY,

Defendant/Counter-Plaintiff.

Case No. 1:23-cv-03234 (JGLC)

**AMENDED COMPLAINT**

**JURY TRIAL DEMAND**

Plaintiff Nickie Vlado, by and through her counsel, Trief & Olk, for her amended complaint alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Nickie Vlado ("Vlado") is a natural person residing in New York City, New York. Vlado is the daughter of Sally Green ("Decedent"), who passed away on December 26, 2022.

2. Upon information and belief, at all times relevant to this action, Defendant CMFG Life Insurance Company ("CMFG") was a foreign corporation organized and existing under the laws of the state of Iowa with its principal place of business in Madison, Wisconsin.

3. CMFG is registered with the New York State Department of Financial Services and licensed to provide life insurance policies within the State of New York.

4. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity between Vlado and CMFG and the controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(1) & (c)(3), because CMFG resides in this district and, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to this claim occurred in this District.

## BACKGROUND

6. On August 25, 2018, Decedent completed an application (the "Application") to obtain a life insurance policy through CMFG.

7. On August 25, 2018, the same day the Application was submitted, Decedent obtained a CMFG life insurance policy numbered LC0320745 (the "Policy"), providing coverage in the amount of $300,000.00.

8. Decedent named Vlado as the Policy's beneficiary.

9. Vlado was Decedent's daughter.

10. Decedent died on December 26, 2022, four years after obtaining the Policy.

11. The Policy was in full force and effect when Decedent died.

12. Nevertheless, CMFG denied Vlado's claim to the benefits of the Policy.

13. CMFG's stated basis for denying Vlado's claim under the Policy was that CMFG had determined, following Vlado's submission of her claim after the death of Decedent, that the Policy was procured through fraudulent misrepresentations.

14. In particular, CMFG informed Vlado that it determined the Policy was "likely not applied for by . . . [Decedent] or with her consent."

15. CMFG's determination in this regard is wrong.

16. CMFG further informed Vlado that "there appear[ed] to be some medical information that was misrepresented in the application."

17. Regardless of the truth or falsity of the medical information in the application for

the Policy, CMFG's rejection of Vlado's claim on this basis violates contractual provisions in the Policy providing that the Policy shall be incontestable, except for nonpayment of premiums, after it has been in force during the lifetime of the insured for a period of two years from its date of issue.

18. At the time of CMFG's rejection of Vlado's claim, the Policy had been in force during Decedent's lifetime for a period greater than two years and all premiums on the Policy had been paid.

19. CMFG misrepresented and fraudulently concealed the timing of its discovery of alleged frauds in connection with the Policy.

20. CMFG's internal records reveal that as early as 2019, during the contestability period on the Policy, the Company conducted an investigation of the Policy and, by no later than June 2019, determined that the Application was questionable.

21. On or around the same time, CMFG issued a fraud alert with respect to the Policy.

22. On or around the same time, CMFG concluded that Decedent was a participant in a fraud, which CMFG referred to as the "nomadic fraud ring."

23. Upon information and belief, CMFG used the term "nomadic" as a reference to the ethnic background of the Decedent as a member of the Romani community.

24. Despite its investigations and findings in 2019, which occurred during the contestability period on the Policy, at no point prior to Vlado's submission of her claim for benefits under the Policy did CMFG reach out to Vlado or to Decedent to resolve what it deemed "questionable" about the Policy or to address the fraud alert or to investigate its determinations that Decedent was identified with a fraud.

25. Instead, at all relevant times prior to Decedent's death in December 2022, CMFG

willfully concealed its questions, alerts, and determinations of fraud from Vlado and from Decedent while continuing to collect premiums on the Policy.

26. CMFG also actively concealed its questions, alerts, and determinations of fraud in telephonic communications concerning the Policy in which Vlado and/or Decedent sought to make payments of the premiums on the Policy.

27. During one such call, “Jamie”, a CMFG employee declined to accept a payment on the Policy on the stated grounds that CMFG was having “system issues” that prevented any payments from being processed.

28. This was known to Jamie to be untrue.

29. In fact, on a separate, recorded line, Jamie informed “Kiersten,” another CMFG employee, that Jamie was not comfortable discussing the Policy due to the existence of a fraud alert with respect to it and her conclusion that the call represented a “fraud situation.”

30. In response, Kiersten suggested that “maybe if we just keep them on hold long enough, they’ll disconnect.”

31. Ultimately, the call was disconnected with no disclosure of the alerts and suspicions discussed by CMFG’s employees.

32. Nevertheless, CMFG did subsequently accept payment of the premium on the Policy.

33. During a separate call, Vlado was placed on an extended hold by “Susan,” a CMFG employee, while Susan discussed with “Rhonda,” another CMFG employee, a fraud alert on the Policy that “came up” just as Susan was about to accept a premium payment from Vlado.

34. Following the hold, Susan falsely told Vlado that her “payment system wasn’t working” and transferred the call to Rhonda.

35. Rhonda subsequently accepted a premium payment from Vlado during the call.

36. Rhonda did not, however, inform Vlado of the fraud alert or any of the other questions, alerts, or determinations of fraud by CMFG concerning the Policy or Decedent.

37. CMFG's pleadings in this action are also misleading and contain misstatements.

38. CMFG asserted in its Counterclaim that it "determined" that Decedent "did not live at the address listed on the Application [for the Policy] and was not associated with the phone number or email address" listed on the application for the Policy in this action, only after Vlado submitted her claim on the Policy following Decedent's death in December 2022. CMFG. (ECF No. 11 (Counterclaim), ¶¶ 19, 20.)

39. In fact, CMFG's internal records demonstrate that, in 2019, it conducted a comprehensive review of, among other things, all addresses and phone numbers associated with Decedent, none of which matched the address or phone number listed in the application for the Policy.

40. Additionally, upon information and belief, CMFG's issuance of a fraud alert in 2019 was based on discrepancies it identified with respect to, among other things, the address, phone number and email address listed on the Application.

41. CMFG's Counterclaim also asserts that the Company "discovered that the bank account listed as the [Decedent's] on the Application belonged to Vlado" only after Vlado's submission of her claim. (ECF No. 11 (Counterclaim), ¶ 21.)

42. In fact, however, CMFG's systems were able to validate the owners of the bank accounts from which it accepted payment.

43. Additionally, during at least one recorded call placed by Vlado to CMFG during the life of the Policy, Vlado volunteered that she had made payments on the Policy, and CMFG

acknowledged that it had records of her prior payments.

44. By accepting Vlado's premium payments on the Policy in 2019 and thereafter with the belief that the Policy was questionable and that Decedent was a participant in a fraud, CMFG waived its right to deny Vlado's claim for benefits, submitted over two years later, on substantially the grounds informing its prior belief.

45. By failing to follow up with Vlado or Decedent at any time during the life of the Policy concerning the information in the Application or CMFG's questions, alerts, and determinations of fraud, CMFG deprived Vlado of the opportunity to address those in timely fashion, while Decedent was alive.

46. By concealing its questions, alerts, and determinations regarding fraud from Vlado and Decedent throughout the life of the Policy, CMFG ensured that the premiums on the Policy would continue to be paid with the full and reasonable expectation that the Policy would be honored following Decedent's death.

47. Had Vlado been aware of CMFG's determinations in 2019 that the Policy was questionable, or that Decedent was a participant in fraud ring, she would have never continued making premium payments under the Policy without first addressing those determinations.

**COUNT I**
**(Breach of Contract)**

48. Vlado repeats and realleges Paragraphs 1 through 47 of the Amended Complaint as if fully set forth herein.

49. Decedent held the Policy issued to her by CMFG.

50. The Policy provided for a death benefit of $300,000.00.

51. The premiums on the Policy were paid in full.

52. The Policy was in effect past the period of contestability at the time of Decedent's

death on December 26, 2022.

53. The death benefit owed under the Policy is payable to Vlado as beneficiary.

54. Vlado is entitled to payment of the death benefit owed under the Policy.

55. CMFG has denied payment of the death benefit owed to Vlado under the Policy without any valid basis.

56. CMFG has breached its contract with Decedent by failing to pay the death benefits to Vlado, the beneficiary of the Policy, as required by the Policy.

57. By reason of the foregoing breach, Vlado is entitled to damages in the amount of $300,000.00, together with interest, costs, disbursements, and reasonable attorneys' fees.

**COUNT II**
**(Declaratory & Equitable Relief)**

58. Vlado repeats and realleges Paragraphs 1 through 47 of the Amended Complaint as if fully set forth herein.

59. Decedent held the Policy issued to her by CMFG.

60. The Policy provided for a death benefit of $300,000.00.

61. Vlado was named the sole beneficiary of the Policy.

62. Decedent died on December 26, 2022.

63. All premiums on the Policy were paid as of Decedent's death, and Decedent otherwise complied with all the terms of the Policy.

64. Nevertheless, CMFG has asserted that the Policy was not in force at the time of Decedent's death.

65. The grounds that CMFG cites for this assertion are false and/or invalid.

66. Accordingly, Plaintiff is entitled to a declaratory judgment and a grant of a writ of mandatory injunction, pursuant to 28 U.S.C. § 2201, declaring the Policy valid and compelling

CMFG to pay the death benefit under the Policy to Vlado.

**COUNT III**
**(Fraud)**

67. Vlado repeats and realleges Paragraphs 1 through 47 of the Amended Complaint as if fully set forth herein.

68. By no later than June 2019, CMFG concluded that the Application was questionable, identified Decedent as a participant in a fraud, and issued a fraud alert on the Policy.

69. These facts were material to Vlado's belief that the Policy was valid and to her payment of premiums thereon.

70. CMFG knew these facts to be material to Vlado and to any reasonable consumer or beneficiary of life insurance products.

71. CMFG willfully concealed these facts from Vlado and lied about them during telephonic communications.

72. CMFG did so with the aim and intention of continuing to collect premiums on the Policy.

73. Vlado reasonably relied on CMFG's material misrepresentations and its omissions of any indication that CMFG questioned the Policy when she made payments of the premiums under the Policy.

74. Vlado has thereby suffered damages in the amount of premiums paid on the Policy.

75. Additionally, CMFG's failure to timely disclose its suspicions or conclusions regarding an alleged fraud in 2019, or at any time prior to Decedent's passing, deprived Vlado of the ability to respond and refute those findings directly with the assistance of Decedent.

76. As a direct result of CMFG's fraudulent conduct, Vlado has suffered damages in an amount not less than the face value of the Policy, i.e., $300,000.00, plus interest as well as the fees and expenses she has been forced to incur in litigating this action.

**COUNT IV**
**(Violation of N.Y. Gen Bus. Law § 349, et seq.)**

77. Vlado repeats and realleges Paragraphs 1 through 47 and 66 through 76 of the Amended Complaint as if fully set forth herein.

78. CMFG engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, by concealing, suppressing, omitting and lying about material facts, including, among other things, its findings, concerns, or suspicions of fraud with respect to life insurance policies it issued.

79. CMFG engaged in this conduct in order to improperly secure the continued payment of premiums on such policies while retaining the option of subsequently rescinding them at its discretion if and when a claim for benefits under the policies was submitted following the death of the insureds.

80. Upon information and belief, CMFG has engaged in this same pattern of unlawful conduct with respect to other similar policies and therefore its conduct affects the public interest and consumers at large.

81. CMFG's representations and omissions were material because they were likely to deceive reasonable consumers about the viability of policies in which they held a beneficial interest and thereby induce them into continuing to pay premiums.

82. CMFG acted intentionally, knowingly, and maliciously to violate New York's General Business Law, and recklessly disregarded Vlado's rights.

83. The above deceptive and unlawful practices and acts by CMFG caused substantial

injury to Vlado that she could not reasonably avoid.

84. As a direct and proximate result of CMFG's deceptive acts or practices, Vlado has suffered damages in an amount not less than the face value of the Policy, i.e., $300,000.00, plus interest and attorneys' fees.

**COUNT V**
**(Violation of New Jersey Consumer Fraud Act ("CFA"))**

85. Vlado repeats and realleges Paragraphs 1 through 47 and 66 through 76 of the Amended Complaint as if fully set forth herein.

86. CMFG engaged in an unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, and the knowing concealment, suppression, or omission of material facts with intent that others rely upon such concealment, suppression, or omission, in violation of N.J. Stat. Ann. § 56:8-2, when its agents concealed, suppressed, omitted and lied about the material fact that CMFG had identified fraud with respect to Policy.

87. CMFG engaged in this conduct in order to improperly secure the continued payment of premiums under the Policy while retaining the option of subsequently rescinding it at its discretion if and when a claim for benefits under the Policy was submitted following the death of Decedent.

88. CMFG's material omissions and false statements induced Vlado to continue making premium payments on the Policy.

89. Vlado reasonably relied on CMFG's false statement and omissions when she continued paying the premium payments on the Policy.

90. Upon information and belief, CMFG has engaged in this same pattern of unlawful conduct with respect to other similar policies and therefore its conduct affects the public interest and consumers at large.

91. As a result of CMFG's deceptive and unconscionable practices, present and former insurance policy holders and beneficiaries have continued to pay premiums to CMFG ignorant of the fact that CMFG has gathered, but kept concealed from them, information that CMFG may subsequently utilize as a basis to rescind the policies and withhold all previously paid premiums, once a claim for benefits is submitted.

92. The above deceptive and unlawful practices and acts by CMFG caused substantial injury to Vlado that she could not reasonably avoid.

93. As a direct and proximate result of CMFG's deceptive acts or practices, Vlado has suffered damages in an amount not less than the face value of the Policy, i.e., $300,000.00, plus interest and attorneys' fees.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

**WHEREFORE**, Vlado respectfully requests judgment:

A. Awarding Vlado the full amount of the Policy benefit, plus interest, attorneys' fees, and costs;

B. Declaring the Policy valid and effective and directing injunctive relief, pursuant to 28 U.S.C. § 2201, compelling CMFG to pay the life insurance benefit payments for the death of Decedent to Vlado; and

C. Awarding Vlado punitive damages.

Dated: New York, New York
October 11, 2023

**TRIEF & OLK**

By______________________________

Eyal Dror
750 Third Avenue, Suite 2902
New York, NY 10017
Tel: (212) 486-6060
edror@triefandolk.com
*Attorneys for Plaintiff*