**MEMO ENDORSED**

November 3, 2023

**VIA ECF**

Jessica G. L. Clarke, United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1040
New York, NY 10007

              Re: *Vlado v. CMFG Life Insurance Company,* Index No. 23 Civ. 3234

Judge Clarke:

      We write on behalf of Plaintiff/Counter-Defendant Nickie Vlado ("Plaintiff" or "Vlado") to request that the Court quash or modify two recent Rule 45 subpoenas issued by Defendant/Counter-Plaintiff CMFG Life Insurance Company ("CMFG") to MetroPCS and T-Mobile (the "Subpoenas").[1] The Subpoenas seek over four years of call and location records for cell phone numbers associated with Plaintiff and her mother, Sally Green ("Decedent"), whose CMFG life insurance policy (the "Policy") is at issue in this action.  After receiving notice of the Subpoenas on October 23, 2023, Plaintiff's counsel objected to them, requesting that their scope be limited to the 3-day period immediately prior to and following the submission of the application for the Policy. The parties thereafter held a meet-and-confer call on October 26 but were unable to resolve their dispute.  Accordingly, the parties now escalate this dispute to the Court.

      **Plaintiff's Position**

      The Subpoenas at issue here are not reasonably calculated to obtain discovery; they are designed to harass, intimidate, and beat Plaintiff into submission in this action.  The Subpoenas demand a full log of every call that Plaintiff and her mother received or placed from their cell phones *and* the geolocation of their cell phones during each of those calls *and* they seek this information for a period extending from August 1, 2018 through December 22, 2022.  In other words, CMFG proposes to use its subpoena power to track over four years' worth of Plaintiff's and her mother's movements and communications. These Orwellian demands – which CMFG categorically refuses to narrow – are entirely disproportionate to the matters at issue, constitute an extreme invasion into the privacy of Plaintiff and her mother, and will impose significant burdens on Plaintiff.  Accordingly, the Court should quash the Subpoenas or modify them.

      As the Court may recall, Plaintiff is the beneficiary of the Policy and commenced this action to obtain its benefits.  Plaintiff originally submitted a claim for benefits to CMFG following her mother's death in December 2022.  However, notwithstanding the lapse (in 2020) of the Policy's contestability period, CMFG denied Plaintiff's claim based on its conclusion that the Policy was likely procured by fraud.  Plaintiff thereafter commenced this action seeking to recover the full benefits – $300,000 – under the Policy.  CMFG subsequently filed a counterclaim alleging that Plaintiff had applied for the Policy without Decedent's consent.  In support of this claim, CMFG alleged, among other things, that following Plaintiff's submission of her claim for benefits,

---

[1] True and correct copies of the subpoenas, redacted to conceal the first seven digits of the cell phone numbers at issue, are attached hereto as Exhibit A.

Hon. Jessica G. L. Clarke
Page 2

CMFG discovered various discrepancies in the Policy's application (the "Application"), including discrepancies with respect to the phone number listed therein. Recent discovery received from CMFG belies its allegations. In particular, a series of highly belated document productions by CMFG demonstrate that, as early as 2019, it had deemed the Policy questionable and identified Decedent as a participant in a fraud ring.[2] Nevertheless, CMFG concealed these determinations from Plaintiff and Decedent while continuing to collect their premium payments. Based on these revelations, Plaintiff filed an October 11, 2023 letter with the Court seeking to amend her pleadings and extend discovery beyond the then-pending deadline of November 6. (ECF Nos. 27.) Thereafter, at the direction of the Court, Plaintiff resubmitted her application as a formal motion, which CMFG did not oppose, and which the Court granted on October 30. (*See* ECF Nos. 28-32.)

On October 23, 2023 – just two weeks prior to the then-pending November 6 discovery deadline, CMFG transmitted Plaintiff notice of its intent to serve ten Rule 45 subpoenas, including the Subpoenas here at issue. The new subpoenas supplemented an earlier set of ten subpoenas previously served by CMFG during the prior course of discovery, which sought, among other things, medical and property records over an extended time-period as well as cell phone data from a single date (August 25, 2018). While, given applicable incontestability laws, Plaintiff believes that all CMFG's subpoenas are ultimately irrelevant in this action, the Subpoenas here addressed are unique in their disproportionality, vexatiousness, and the undue burden they impose and therefore must be quashed or modified.[3]

First, CMFG lacks a reasonable basis to seek discovery concerning Plaintiff's and her mother's cell phone data beyond the days immediately proximate to the submission of the

---

[2]  Among other things, discovery documents demonstrate that, in August 2019, CMFG conducted a background investigation concerning Decedent that identified her address and phone information, including the cell phone number that is the subject of the Subpoenas.

[3]  "The reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)." *Syposs v. U.S.*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998). As amended in 2015, Fed. R. Civ. P. 26(b)(1) provides, in relevant part, that "[p]arties may obtain discovery regarding … matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See also Moll v. Telesector Res. Grp., Inc.*, 2017 WL 2241967, at *2 (W.D.N.Y. May 23, 2017) (noting that "undue burden" standard, provided under Fed. R. Civ. P. 45(c)(3)(A), likewise considers "relevance, the need of the party for the documents, the breadth of the document requests, the time period covered by it, the particularity with which the documents are described and the burden imposed" ). In addition to the above, a court may also "quash, modify or condition a subpoena to protect a person affected by the subpoena from unnecessary or unduly harmful disclosures of confidential information," *Syposs*, 181 F.R.D. at 226, or "to protect individuals from undue annoyance." *Dapkus v. Arthur J. Gallagher Serv. Co., LLC*, 2021 WL 83479, at *7 (D. Conn. Jan. 11, 2021) (quotations omitted). The Advisory Committee Notes to the 2015 Amendment of Rule 26 clarify that the rule was amended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse."

Application.  Implicitly recognizing this fact, CMFG limited its prior Rule 45 subpoenas for cell phones records to seek data from only a single day, August 25, 2018, which was the date the Application was electronically submitted.  By contrast, the instant Subpoenas seek over *four years* of records.  CMFG lacks any reasonable justification for this enormous expansion in scope.  While two of its arguments below reflect an interest in exploring the circumstances surrounding the Application's completion, and particularly the meeting that Plaintiff recalled occurring on or around August 25, 2018 between Decedent and a third party, Cynthia Petro,[4]  Plaintiff's proposal to limit the Subpoenas to the three-day period around August 25, 2018 fully addresses that interest. Expanding the scope of the Subpoenas beyond Plaintiff's proposal is neither reasonable nor proportionate with the needs of this action.  The same is true for CMFG's remaining two justifications for the Subpoenas, *i.e.*, that they will help CMFG: (a) test Plaintiff's deposition testimony that, throughout her life, and not only when Decedent met with Ms. Petro to discuss the Policy, she occasionally resided with or visited Plaintiff, and (b) determine Plaintiff's location when CMFG transmitted certain notices to the address listed in the Application.  However, neither of these issues is remotely relevant to the question of Decedent's consent and neither justifies the egregiously broad scope of the Subpoenas, which seek both location and call data.

      Second, the Subpoenas constitute an extraordinary intrusion into Plaintiff's and her mother's personal lives that would constitute an obnoxious invasion of privacy under any circumstances but is particularly invidious here, where CMFG declined to seek any information from Plaintiff or Decedent either during the contestability period of the Policy or while Decedent was still alive.  Indeed, it is only due to CMFG's failure in this regard – and its active concealment of the questions and concerns regarding the Policy that it identified in 2019 – that CMFG can cite any controversy regarding Decedent's consent in the first place.  Having failed to address these issues in any way during the life of the Policy, CMFG must be denied license to revisit them now in the scorched earth manner proposed by the Subpoenas.

      Finally, while the Subpoenas do not seek records from Plaintiff, if permitted, they would nevertheless impose heavy burdens with respect to Plaintiff's review due their inordinate scope.  Based on the single day of cell phone data previously subpoenaed by CMFG, Plaintiff anticipates that the response to each Subpoena would consist of over 20 calls per day for over 1,600 days (*i.e.*, over 64,000 calls for both Subpoenas).  Worse yet, because the data only set forth cell tower notations – and not geographic descriptors – for each call, the notations disclosed would have to be indexed against cell company records to ascertain their latitude and longitude, which would then have to be input into an online mapping tool to determine the general location of each call. Moreover, and beyond the immense undertaking of merely determining the location of each call over a four-year span, a diligent review would also necessarily entail extensive efforts to associate the listed calls with individuals as well as analyses of patterns in the data by call location, time, date, and number.[5]  The burden entailed by such a review is wholly disproportionate with the

---

[4]  In her deposition, Plaintiff confirmed that the phone number listed in the Application was Ms. Petro's, such that items (2) and (4) in its arguments below boil down to the same issue.

[5]  Throughout these review efforts, Plaintiff would also labor under a distinct informational disadvantage concerning CMFG's prior investigation of a purported "nomadic" fraud ring. Records in discovery indicate that, in 2019, CMFG used a series of telephone numbers to identify

Hon. Jessica G. L. Clarke
Page 4

$300,000 amount in controversy in this action. The Court should deny CMFG the ability to impose this burden by quashing the Subpoenas or modifying them as Plaintiff has proposed.

**CMFG's Position**

This litigation concerns the validity of a life insurance policy insuring the life of Sally Green (the "Insured"). The application for that policy was submitted electronically from an iPhone in New Jersey. Vlado alleges that the Insured completed the application at 1909 Nottingham Way in Trenton, New Jersey. CMFG contends that an imposter who was aware that the Insured was in poor health posed as the Insured and completed the application for the policy without the Insured's knowledge or consent.

Based on that contention, CMFG asserted a counterclaim against Vlado for violation of the New Jersey Insurance Fraud Prevention Act (N.J.S.A. § 17:33A-1 *et seq.*) (the "NJIFPA"). An enumerated violation of the NJIFPA is to "present[] or cause[] to be presented any written or oral statement as part of, in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy … knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim[.]" N.J.S.A. § 17:33A-4(a)(1).

One of the facts supporting CMFG's contention that an imposter completed the application was that the phone number listed on the application for the policy was not the Insured's phone number. To confirm that the phone number on the application was not the Insured's and to identify the Insured's actual phone number, CMFG previously issued several subpoenas requesting phone call records. Records responsive to those subpoenas include cell tower data for each call that the phone makes or receives. That data can be used to determine where the phone was located at the time of each call.

CMFG's subpoenas included a subpoena for the call records and location data of a cell phone with a number ending 8889 on the day that the application was submitted (i.e., August 25, 2018). That number, among others, was mentioned in the medical records for the Insured that CMFG received in response to other subpoenas and appeared to be the Insured's, but CMFG had not received any information confirming that the number was in fact the Insured's number.

On October 17, 2023, Vlado testified at deposition that the number was the Insured's cell phone number. *See* Exhibit B (Excerpts from the Transcript of N. Vlado's Deposition) at 71:24-75:9; *see also id.* at 10:8-22 (Plaintiff reviewed a sheet of her and the Insured's phone numbers in preparation for her deposition). Vlado also testified that the Insured often stayed with her at 1909 Nottingham Way, including the night prior to and the day of the application for the policy, and on-and-off after the policy was procured until the Insured passed. *Id.* at 72:25-73:19; 82:7-17.

Because Vlado testified that the number was the Insured's and that the Insured stayed with Vlado on the day of the application at 1909 Nottingham Way, CMFG's counsel asked Vlado if she knew why the Insured's phone was located in Forked River, New Jersey—approximately 1 hour

---

as many as 200 applications with this purported fraud ring. However, CMFG has failed to disclose these phone numbers (or many other details about its prior fraud ring investigation), leaving Plaintiff unable to effectively determine if the numbers listed in her records would be helpful or harmful in distinguishing the Policy from the purported fraud ring.

away from 1909 Nottingham Way—22 minutes after the application for the policy was submitted. *Id.* at 108:4-109:21.  Vlado responded, "I'm not sure." *Id.*

In light of Vlado's testimony, including the disclosure that the number ending 8889 was the Insured's cell phone number, CMFG promptly noticed and subsequently served the subpoenas that Vlado now seeks to quash.  Those subpoenas seek call records, including location data, for the Insured's phone and Vlado's phone during the weeks prior to the application and until the Insured's death.  Records responsive to those subpoenas pertain to several key issues in this litigation, including whether Vlado has presented any written or oral statements in support of a claim for payment of an insurance benefit knowing that the statement contains false information concerning a material fact.  Such information is therefore relevant to the parties' claims and defenses and discoverable.

As there is no disputing that records of the Insured and Vlado's location will shed light on whether Vlado has violated (and continues to violate) the NJIFPA, Vlado has not sought to quash the subpoenas in their entirety.  Instead, Vlado claims that the scope of the subpoenas should be limited to the three days immediately prior to and after the application.  Vlado is wrong.

The records that the subpoenas seek will prove whether: (1) Vlado was forthright when she testified that the Insured lived with her and, if so, when; (2) Vlado called Cynthia Petro—the individual that Vlado testified helped the Insured complete the application at 1909 Nottingham Way—to request that Cynthia assist the Insured with the application (*id.* at 89:22-90:5); (3) Vlado was located at 1909 Nottingham Way when premium notices for the policy were delivered to that address (*id.* at 154:15-25); and (4) Vlado or the Insured ever called the phone number listed as the Insured's on the application for the policy.  Accordingly, every record that the subpoenas seek is relevant to CMFG's allegations in this lawsuit.

Vlado's claim that the subpoenas should be limited in scope because they constitute an extraordinary invasion into Vlado and the Insured's personal lives is also in error.  Indeed, the crux of CMFG's allegations is that someone was aware that the Insured was in poor health and procured the policy to benefit from the Insured's death, without the Insured's knowledge or consent.  That is an extraordinary invasion of the Insured's personal life.  Subpoenas that seek cell phone records *that CMFG's counsel has offered to designate as Confidential pursuant to the Stipulated Protective Order* (*see* D.E. 20) do not constitute such an invasion.

For these reasons, and as may be set forth at any hearing or in response to any motion that this Court allows, CMFG respectfully requests that the Court uphold the subpoenas and allow CMFG to obtain information relevant to its claims and defenses.

Respectfully submitted,

By:   */s/ Eyal Dror*
Eyal Dror
TRIEF & OLK
750 Third Avenue, Suite 2902
New York, New York 10017

Hon. Jessica G. L. Clarke
Page 6

          Tel: (212) 486-6060
          Email: edror@triefandolk.com

          *Attorneys for Plaintiff*

          */s/ Eric Au*
          Eric Au
          FAEGRE DRINKER BIDDLE & REATH LLP
          One Logan Square, Ste. 2000
          Philadelphia, PA 19103
          Tel.: (215) 988-2700
          Eric.Au@faegredrinker.com

          *Attorneys for CMFG*

Encl.

Plaintiff's motion to modify the subpoenas to MetroPCS and T-Mobile is GRANTED. Defendant's request for cell phone records, including location data, over a four year period is not proportionate to the needs of the case. The vast majority of the information that would be produced in response to subpoenas that broad would likely be entirely irrelevant, and Defendants have failed to show that the information sought (outside of the time period of the application) is anything more than minimally relevant to this case. As such, the subpoenas shall be limited in scope to the time period proposed by Plaintiff from August 22, 2018 to August 28, 2018.

SO ORDERED.

*/s/ Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge

Dated: November 6, 2023
       New York, New York