December 22, 2023

**VIA ECF**

Jessica G. L. Clarke, United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1040
New York, NY 10007



Re:  *Vlado v. CMFG Life Insurance Company,* Index No. 23 Civ. 3234

Judge Clarke:

We write to address a discovery dispute that the parties have been unable to resolve through prior correspondence and a meet-and-confer call held on December 18, 2023.

**Plaintiff's Position:**  This dispute arises from certain objections lodged by Defendant CMFG Life Insurance Company's ("CMFG") pursuant to which it has categorically refused either: (1) to respond to a November 10, 2023 discovery request (the "Discovery Request") pursuant to which Plaintiff demanded that CMFG provide information about the scope of a "nomadic fraud ring" that CMFG supposedly identified and which, by 2019, it suspected included the policy at issue in this action (the "Policy"), or (2) to produce any witness(es) to testify as to three topics set forth in Plaintiff's October, 24, 2023 notice of 30(b)(6) deposition (the "30(b)(6) Topics") concerning (a) CMFG's document collection, review, and production efforts in this action (the "Document Topic"), (b) CMFG's general underwriting practices with respect to its life insurance products; and (c) regulatory approvals concerning such underwriting practices and life insurance products (collectively with Topic (b), the "Underwriting Topics").  In an effort to resolve this dispute, Plaintiff's counsel proposed significant compromises: namely, with respect to the Discovery Request, that CMFG merely re-produce a single spreadsheet (with all PII redacted) that CMFG has already previously disclosed in heavily redacted form, and, with respect to the Underwriting Topics, that all deposition questioning be limited to discrete documents specifically referenced or produced by CMFG in discovery.  CMFG not only rejected Plaintiff's proposals, it refused to propose any alternative other than Plaintiff's total acquiescence to CMFG's objections.

Plaintiff's demands are modest, clearly probative of her claims and defenses, and should not be foreclosed by CMFG.  In particular, (i) the spreadsheet that Plaintiff demands is reasonably calculated to yield discoverable information regarding her contention that CMFG willfully elected to continue collecting premiums on life insurance policies it suspected were associated with fraud; (ii) the Document Topic is *de rigueur* in any deposition, but especially vital here, where CMFG's document productions contain material gaps and omit key metadata; and (iii) the Underwriting Topics are geared toward interpreting documents produced or identified by CMFG that discuss how it managed medical risk and whether its practices met with regulatory approval.

**The Discovery Request:**  As the Court may recall, Plaintiff is the beneficiary of the Policy on the life of her late mother, Sally Green ("Decedent").  Decedent died years after the Policy's contestability period.  Nevertheless, following Decedent's death, CMFG denied coverage on grounds of an alleged, newly discovered fraud.  Plaintiff then initiated this action, and CMFG later filed a counterclaim under the New Jersey Fraud Prevention Act alleging that the Policy was procured by fraud.  During subsequent discovery, Plaintiff learned that, <u>by no later than 2019, CMFG deemed the Policy questionable and associated it with a so-called "nomadic fraud ring"</u>,

Hon. Jessica G. L. Clarke
Page 2

<u>which was comprised of multiple policies and applications</u>.  Additionally, when, in January 2020, CMFG issued another policy on Decedent's life – naming Plaintiff's sister as beneficiary – CMFG promptly associated that policy with the nomadic fraud ring as well.  Even so, CMFG continued collecting premiums on all these policies for years without raising any questions with the insured or beneficiaries and while its agents actively concealed CMFG's suspicions in recorded telephone calls.  Given these revelations, on November 7, 2023, Plaintiff amended her pleadings to add three new claims for common law and consumer fraud against CMFG.  On November 10, Plaintiff served discovery requests probative of these claims.  Principal among these was the Discovery Request, pursuant to which Plaintiff demanded that CMFG identify, among other things, the number of policies or applications associated with the fraud ring, the dates such associations were made, the policy coverage amounts, and the policies' active status and any claim status.

In responses served on December 11, 2023, and belatedly verified December 18, CMFG objected and refused to respond to the Discovery Request.  CMFG did so on the contention that the Request was purportedly irrelevant, disproportionate, and overbroad because this action was limited to addressing "the validity of the Policy".  Plaintiff's counsel responded on December 13, reminding CMFG's counsel of Plaintiff's fraud claims and her allegations that CMFG had a "policy and practice of identifying suspected fraud with respect to policies it issued – in this case, the policies implicated in the suspected 'nomadic fraud ring' – and electing to eschew reasonable concerted action in response in favor of the continued collection of premiums."  Even so, to avoid imposing any undue burden, Plaintiff proposed a compromise.  In its prior disclosures, CMFG had produced a spreadsheet listing policies and applications that CMFG associated with the suspected nomadic fraud ring, but from which it had redacted all entries except those associated with the Decedent or her husband.  Plaintiff proposed that CMFG merely re-produce this spreadsheet, with all PII redacted, but all other data disclosed.  Plaintiff's counsel noted that this approach would satisfy Plaintiff, while imposing minimal burdens on CFMG.

In response, CMFG suggested, via a December 15 email, that the parties discuss Plaintiff's proposal during their December 18 meet-and-confer call.  Yet, during that call, CMFG's counsel flatly rejected Plaintiff's proposal on the stated grounds that it would risk creating multiple mini-trials in this action.  The Court has already dismissed this objection as unwarranted.  In the context of rejecting CMFG's prior objection to producing its (far more expansive) files concerning Decedent's husband policy (ECF No. 23), the Court admonished that "[t]he mere production of documents in discovery does not mean that this evidence will ultimately be admitted at trial or that the Court will permit mini-trials about separate policies unconnected to the allegations in this case."  Consistent with that ruling, and in light of the ease with which CMFG can produce the less-redacted spreadsheet, Plaintiff respectfully requests that the Court compel its production.

***The 30(b)(6) Topics:***  On October 24, 2023, Plaintiff served an amended notice of 30(b)(6) deposition on CMFG, requesting that CMFG identify representatives to testify as to various subjects, including the 30(b)(6) Topics.  CMFG served no formal response to Plaintiff's notice of deposition.  Instead, on Friday night, December 8, 2023, CMFG transmitted an email setting forth, with respect to the 30(b)(6) Topics, only one express objection.  Namely, based on proportionality and undue burden, CMFG refused to designate a witness to testify about CMFG's underwriting practices with respect to its life insurance products generally, but rather would agree to provide testimony only concerning underwriting "specific [to the] product at issue in this litigation."  With respect to the remaining 30(b)(6) Topics, CMFG's email simply stated that "CMFG will send a

formal objection to the noticed topic." It never did so.

On Monday, December 11, 2023, Plaintiff's counsel responded to CMFG's December 8 email, noting that CMFG had, in response to Plaintiff's earlier document demands for CMFG's underwriting practices, produced a presentation describing "differences in practices with respect to [differing policies, including] 'SIT or SIWL' and 'GAWL' policies and 'medically underwritten' versus 'guaranteed' policies." Plaintiff's counsel stated that he was willing to limit his general underwriting questions to the products and practices referenced in the presentation. CMFG did not respond in writing. Instead, it stated that it wished to discuss this and the other 30(b)(6) Topics during the parties' December 18 meet-and-confer call. During the call, however, it flatly refused to designate a witness to address any of the 30(b)(6) Topics. It asserted, with respect to the Document Topic, that privilege precluded it, and, with respect to the Underwriting Topics, that they were irrelevant and imposed burdens disproportionate with the needs of the case.

CMFG's categorical objections lack merit. With respect to the Document Topic, Plaintiff is clearly entitled to discovery concerning the scope of CMFG's review, collection, and production of documents, which still admit of inexplicable gaps. Such questioning is the only direct tool to test an adversary's satisfaction of its document discovery obligations, and, indeed, for its part, CMFG posed multiple questions to Plaintiff on this subject during her deposition. With respect to the Underwriting Topics, Plaintiff's counsel has proposed limiting his questioning to documents previously produced or identified by CMFG in document discovery, namely, the underwriting presentation that CMFG produced and certain regulatory materials it identified. CMFG may not, in good faith, produce or identify these documents in response to Plaintiff's document requests, yet deny Plaintiff the right to ask questions about them during depositions. When narrowed in this fashion, the Underwriting Topics impose no undue burden. Moreover, there is no credence to CMFG's claim that these Topics are irrelevant. Plaintiff is entitled to probe how CMFG generally assessed medical risk and viewed the materiality of medical misrepresentations. Additionally, given the fact that CMFG has asserted the protection of New Jersey law in this case, Plaintiff is certainly entitled to question whether CMFG was even authorized, under that law, to sell the product at issue here. Accordingly, in addition to the Document Topic, Plaintiff requests that the Court direct CMFG to designate a witness to testify regarding the Underwriting Topics, as limited to the documents that CMFG has identified or produced regarding those Topics.

**Defendant's Position:**

***The Discovery Request.*** While Plaintiff has objected to CMFG's requests for additional medical records that pertain directly to the fraudulent misrepresentations in the application for the policy (ECF No. 49), Plaintiff seeks information regarding approximately 1,000 other policies that do not insure the life of Sally Green and do not name Plaintiff as the beneficiary. CMFG compiled the spreadsheet that Plaintiff seeks as part of its obligation to report *suspected* fraud to the New Jersey Department of Banking and Insurance. CMFG has not investigated to confirm whether each policy in the spreadsheet is in fact fraudulent – nor does CMFG have a duty to do so. Therefore, the spreadsheet has no bearing on the "practice" Plaintiff alleges. Furthermore, Plaintiff's request breaches the privacy of policyholders in the spreadsheet because it is harmful for Plaintiff to think those policyholders committed fraud based on being on a list of *suspected* (not confirmed) fraud. The spreadsheet has no probative value with respect to Plaintiff's assertion, and even if there was even a modicum of probative value, it does not outweigh the policyholders'

Hon. Jessica G. L. Clarke
Page 4

privacy interest.

Indeed, as CMFG predicted in the parties' letter of August 25, 2023, Plaintiff now seeks to turn this case into minitrials regarding approximately 1,000 other policies based on a spurious allegation that the spreadsheet at issue will somehow show whether CMFG continued to collect premiums on knowingly fraudulent policies. Plaintiff neglects to mention that the spreadsheet mentions nothing about what CMFG will do with respect to any given policy or the current or prior status of any given policy. Ergo, Plaintiff's request is a precursor to a future request for additional information regarding the current status of approximately 1,000 other policies that have nothing to do with Plaintiff or this litigation and are not discoverable.[1]

***30(b)(6) Deposition Topics.*** On December 8, CMFG designated witnesses for 12 of the 14 topics in Plaintiff's amended 30(b)(6) Deposition Notice. CMFG indicated that it wholly objected to 2 topics. CMFG also objected to the scope of 2 other topics, but still designated a witness for each. On December 11, Plaintiff's counsel agreed to the scope of CMFG's objection as to one of the topics. Thus, 3 of the 30(b)(6) Deposition topics remain at issue (Topics 1, 2, and 13). As explained at counsels' December 18 meet-and-confer, and set forth below, Topics 1, 2, and 13 are objectionable and outside the scope of appropriate discovery under Rule 26 and seek information inappropriate for Rule 30(b)(6) testimony:

**Topic 1:** *"CMFG's underwriting policies and practices with respect to life insurance applications, including the application for the policy of Sally Green at issue in this action (the "Green Policy") and the application for the policy of Frank Vlado (the "Vlado Policy") submitted the same day[.]"* The policy at issue is a simplified issue term life insurance policy. CMFG has agreed to present a witness regarding the underwriting practices associated with that product type. Topic 1, however, seeks for CMFG to testify to the entire spectrum of CMFG's underwriting practices with respect to all of its life insurance applications and products. Thus, the scope of Topic 1 is disproportionate to the issues in this matter, and seeks information for products that are irrelevant to the specific life insurance product at issue. The broad and generalized nature of Topic 1 seeks information for products that are irrelevant to the specific life insurance product at issue in this litigation and would place an undue burden on CMFG's witness. For those reasons, CMFG requests the scope of Topic 1 be limited to testimony regarding the underwriting of its Individual Term Life Insurance policies, the "Green Policy" and the "Vlado Policy."

**Topic 2:** *"New Jersey regulatory reviews and approvals, if any, of CMFG's underwriting policies and practices with respect to its life insurances [sic] applications and policies, including*

---

[1] Under the law, files for policies other than the policy at issue are irrelevant and not subject to discovery if the insurer did not 'rely upon that information to make the determination to pay or deny the claims." *Utica Mutual Ins. Co. v. Clearwater Ins. Co.*, 2015 WL 12777360, at *2 (N.D.N.Y. Jan. 20, 2015); *see also, e.g., Principal Life Ins. v. Mosberg*, 09-cv-02571, (E.D.N.Y.) (Nov. 10, 2009 Transcript of Oral Hearing (ECF Docket No. 25-7 at 45) (holding that other policy applications issued by the insurer, which were not at issue in the case, were not subject to discovery)); *Dade Cty. Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 2011 WL 13100237, at *2 (S.D. Fla. Aug. 1, 2011).

*the underwriting policies and practices utilized with respect to the Green and/or Vlado Policies[.]"* Topic 2 is objectionable because: (a) CMFG does not know what regulatory provision(s) Plaintiff is referring to; and (b) if Plaintiff wishes to learn about New Jersey regulatory practices, that information should be obtained from a New Jersey regulator – not CMFG. The simplified issue term product was reviewed and approved pursuant to the Interstate Insurance Compact.[2] As such, CMFG's underwriting assumptions with respect to the product were approved by the Insurance Compact and the product was consequently approved for issuance in New Jersey.[3] New Jersey's regulators did not perform a review of such underwriting assumptions. Because no such regulatory review occurred, the broad scope of Topic 2 would also require testimony on information that is not known or reasonably available to CMFG, making it impossible for CMFG to reasonably select a designee or reasonably prepare for deposition. For these reasons, CMFG requests that Topic 2 be excluded from its 30(b)(6) Deposition.

**Topic 13:** *CMFG's process for collection, review, and production of documents and information in response to Plaintiff's discovery requests in this action[.]"* CMFG objects to Topic 13 on the basis that it violates the attorney-client privilege and attorney work product doctrines. As written, Topic 13 seeks to require CFMG's designee to disclose the process of its collection, review, and production of responsive documents requested through this litigation. This process would be completed at the direction of CMFG's counsel, thus any information, analysis, and communications, made in connection to the process are protected by the attorney work product doctrine and attorney client privilege. *AIU Ins. Co. v. TIG Ins. Co.*, 2009 WL 1953039, at *7 (S.D.N.Y. July 8, 2009) ("[C]ounsel's opinion regarding which documents out of the commutation files would be worth reviewing represent attorney work-product and, accordingly, these documents should not be produced."). Plaintiff already has all relevant, non-privileged evidence, provided through over ten document productions from CMFG during the course of discovery. Plaintiff's demand for CMFG to disclose its selection process and compilation of documents (decided in collaboration with its attorneys) is an improper attempt to work-around the attorney-client privilege and attorney work product privilege. *Kodak Graphic Commc'ns Canada Co. v. E.I. du Pont de Nemours & Co.*, 2012 WL 413994, at *5 (W.D.N.Y. Feb. 8, 2012) (Demanding the "opposing party disclose its attorney's selection and compilation of certain documents is often a thinly-veiled effort 'to ascertain how [counsel] intends to marshall the facts, documents and testimony in [his] possession, and to discover the inferences that [counsel] believes properly can be drawn from the evidence it has accumulated.") (quoting *S.E.C. v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992)). Therefore, CMFG requests that Topic 13 be excluded from its 30(b)(6) Deposition.

---

[2] The Insurance Compact "develops detailed and comprehensive uniform product standards containing balanced and strong consumer protections," and through the Compact, "Companies submit one product for thorough review by an experienced regulatory team of reviewers and actuaries." *See* https://content.naic.org/sites/default/files/government-affairs-brief-about-insurance-compact.pdf.

[3] The memorandum regarding said approval is publicly available, and CMFG's counsel directed Plaintiff's counsel to it.

Respectfully submitted,

By:    /s/ Eyal Dror
Eyal Dror
TRIEF & OLK
750 Third Avenue, Suite 2902
New York, New York 10017
Tel: (212) 486-6060
Email: edror@triefandolk.com

*Attorneys for Plaintiff*

By: /s/ Franziska R. Mangot
Franziska R. Mangot (*pro hac vice*)
Faegre Drinker Biddle & Reath LLP
600 Campus Drive, Floor 2
Florham Park, New Jersey 07932
Tel.: (973) 549-7000
Franziska.Mangot@faegredrinker.com

*Attorneys for Defendant/Counter-Plaintiff CMFG Life Insurance Company*

---

The Court grants Plaintiff's motion with respect to the 30(b)(6) topic regarding Defendant's discovery compliance (Topic 13). Although Defendant asserts privilege as a basis to exclude this topic, the Court agrees that steps a party has taken to preserve, collect and produce responsive documents are not privileged for the reasons stated in *Vasoli v. Yards Brewing Co., LLC*, 2021 WL 5045920, at *2 (E.D. Pa. Nov. 1, 2021). Furthermore, counsel for Plaintiff acknowledged that he will not ask the witness questions about privileged communications with counsel.

Courts have, however, limited "discovery on discovery" based on relevance if the requesting party has failed to make "some showing that a producing party's production has been incomplete." *Freedman v. Weatherford Int'l Ltd.*, No. 12 CIV. 2121 LAK JCF, 2014 WL 4547039, at *1–2 (S.D.N.Y. Sept. 12, 2014) (citing Orillaneda v. French Culinary Institute, No. 07 Civ. 3206, 2011 WL 4375365, at *6–7 (S.D.N.Y. Sept. 19, 2011). Defendant did not assert any such failure as a basis to exclude this topic, and, in any event, Plaintiff has asserted that Defendant failed to produce relevant metadata for certain documents, along with other deficiencies. Accordingly, the Court will permit counsel to question Defendant's 30(b)(6) witness about this topic.

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge

Dated: December 27, 2023
     New York, New York