January 9, 2024

**VIA ECF**

Jessica G. L. Clarke, United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1040
New York, NY 10007

      Re: *Vlado v. CMFG Life Insurance Company,* Index No. 23 Civ. 3234

Judge Clarke:

  We write to advise the Court of a discovery dispute arising from two depositions conducted by Plaintiff's counsel on January 4, 2024. During those depositions, the witnesses testified about information contained in CMFG's internal systems regarding the policy at issue in this action (the "Policy") on the life of Sally Green ("Decedent"). Through subsequent emails and two meet-and-confer calls (both on January 5), Plaintiff demanded that CMFG produce the information contained in its systems, asserted that the same should have previously been produced, and alleged that Plaintiff had been prejudiced by CMFG's failure to produce the information. CMFG disputed that it was required to provide Plaintiff with access to its internal systems but agreed to produce screenshots of its internal systems regarding the policy. Accordingly, the parties have partially resolved the dispute by jointly seeking an additional 30-day extension of discovery allowing CMFG to review its systems and produce additional records within 14 days. The parties, however, have not agreed regarding Plaintiff's request for sanctions against CMFG based on the purportedly untimely disclosure.

  *Plaintiff's Position:*

  One of Plaintiff's central contentions in this case is that CMFG was fully aware, as early as 2019, of multiple alleged red flags pertaining to the Decedent and the Policy, but that it chose to ignore these and to continue collecting premiums on the Policy until, years later, Plaintiff submitted a claim for benefits. At that point, notwithstanding New Jersey's incontestability laws, CMFG invoked the very same alleged red flags it had previously identified (but ignored) as a basis for voiding the Policy, and this action ensued. In order to adduce evidence concerning this line of facts, during the course of discovery, Plaintiff demanded that CMFG produce all fraud alerts that it entered with respect to all policies it issued on the life of Decedent (including the Policy) as well as with respect to an additional policy issued on the life of Decedent's husband (collectively, the "Policies"). Additionally, in an October 9, 2023 email to CMFG's counsel, the undersigned cited specific call recordings produced by CMFG that contained direct references to fraud alerts on the Policy, and again demanded that CMFG produce all documentation concerning those alerts. CMFG now argues that counsel's request somehow did not extend to data concerning fraud alerts that resided on CMFG's internal administration systems. This is an inexplicably cramped reading of counsel's demands, and it is untenable given that the data CMFG failed to produce was expressly referenced in the calls that counsel cited in October 2023. Plaintiff's counsel threatened, at that time, to escalate the issue to the Court if the fraud alert documentation was not produced. In response, CMFG represented that it *had* produced the fraud alert, which it identified as a single

Hon. Jessica G. L. Clarke
Page 2

document, attached hereto as Exhibit A, with no information about, *inter alia*, who entered it or when. Notwithstanding this, much to the shock and dismay of Plaintiff's counsel, testimony he elicited during the January 4 depositions directly contravened CMFG's representations. In particular, both of the deposed witnesses – former call center agents who discussed fraud alerts on the Policy in separate calls recorded in 2019 and 2020 – testified that the document produced at Exhibit A was **NOT** the fraud alert that they discussed on their calls. Their testimony further indicated that, at the very least, CMFG should have additional notes addressing the alerts entered on the Policy (and any other alters entered on the Policies) as well as data concerning the dates the alerts were entered and the individuals entering them. CMFG's failure to identify or produce all such records in October 2023, when Plaintiff expressly demanded them, is a clear violation of its discovery obligations and has compelled Plaintiff to waste extensive resources, including, but not limited to, the time and expense Plaintiff's counsel incurred in selecting the witnesses to depose and in subsequently scheduling and conducting the January 4 depositions only to learn that CMFG had withheld the key documents – the actual alerts – that were the main subject of those depositions and from which the deposed witnesses had quoted during their recorded calls.

Beyond the above, during the course of discovery, Plaintiff formally demanded, at the outset of discovery, that CMFG produce all internal communications concerning the Policies, and all documents concerning payments made under them. As with Plaintiff's request for fraud alert documentation, Plaintiff's demands created no exception for data residing on CMFG's internal administration systems. Plaintiff's counsel followed up on these demands in multiple emails and meet-and-confer calls with specific requests for, among other things, call logs and payment history data. In response, CMFG's counsel not only explained that CMFG had gathered and produced any such records it possessed, but further represented, during multiple meet-and-confer discussions, that CMFG had produced *all* records regarding the Policies in its possession as well as all records concerning any investigations conducted on the Policies. Again, however, the January 4 depositions proved this representation false. Both witnesses testified that CMFG utilized multiple, readily accessible systems to administer its life insurance policies, and that those systems housed extensive data and communications concerning the policies, including among other things, call logs, payment methods, policy updates, and general policy notes entered by CMFG agents. Notwithstanding this, it appears that much, if not all, of this data was never previously produced by CMFG in discovery. Indeed, despite the Federal Rules' mandate that the parties openly discuss issues pertaining to discovery and disclosure of electronically stored data at the outset of discovery, *see* Fed. R. Civ. P. 26(f)(3), Plaintiff did not even learn of the data until the January 4 depositions. CMFG's present effort to parse Plaintiff's prior discovery demands to exclude data residing on its internal administration systems is meaningless in a fair exchange of discovery.

While CMFG's counsel has indicated that CMFG is now prepared to review and produce data from its systems concerning the Policies, including all fraud alert documentation, significant damage from its prior failure to do so has already been done. Plaintiff was not only denied use of the data during the January 4 depositions, CMFG's failure to produce the data to this point, and in accordance with the discovery schedules imposed by this Court, has compelled Plaintiff's counsel to expend enormous time and resources dealing with unnecessarily opaque and incomplete productions. By the same token, the failure now compels the parties to seek an additional extension

Hon. Jessica G. L. Clarke
Page 3

of the discovery deadline, which has itself already been extended multiple times due to CMFG's prior delays.

Given CMFG's wanton breaches of its discovery obligations, which impose material prejudice on Plaintiff and come on the backdrop of a history of delay and obstruction (*see*, *e.g.*, ECF Nos. 23, 45, 52), Plaintiff submits that it would be inappropriate merely to extend discovery and order productions at this juncture without imposing sanctions upon CMFG. Accordingly, Plaintiff respectfully requests that, in addition to extending the discovery deadline by 30 days to February 9, 2024 and directing that, by January 26, CMFG produce all additional data from its systems concerning the Policies, the Court enter an order, pursuant to Rule 37 of the Federal Rules of Civil Procedure, compelling CMFG to pay the attorneys' fees and expenses associated with the undersigned's preparation for and conduct of the January 4th depositions. These total to $7,750 in legal fees plus ordinary reporting expenses for which Plaintiff has not yet been invoiced. Notably, this amount not only excludes the fees associated with resolving this dispute, it is but a fraction of the resources that Plaintiff needlessly expended and which could have been put to more effective use had CMFG timely complied with its discovery obligations. Accordingly, there is no efficacious lesser sanction the Court can impose while still serving the purposes of Rule 37 to ensure that a party will not benefit from its own failure to comply with discovery obligations and to provide both specific and general deterrents. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 & 149 (2d Cir. 2010); *see also Ali v. Dainese USA, Inc.*, 577 F. Supp. 3d 205, 222-24 (S.D.N.Y. 2021) (ordering sanctions in the form of monetary fees where party failed to timely produce documents during discovery).

### *Defendant's Position:*

Plaintiff's claims are based on a misunderstanding of the testimony of two CMFG call center representatives who were not involved in CMFG's investigation of the policy at issue. Since Plaintiff's counsel obtained that testimony (less than one week ago), CMFG's counsel confirmed that CMFG produced the only fraud alert that was placed on the policy, a log of all premiums paid on the policy, and copies of all call recordings it possesses regarding the policy. CMFG's counsel also agreed to produce, and subsequently produced, screenshots of CMFG's internal administration systems that the witnesses testified about. Those screenshots confirmed that CMFG produced the records that Plaintiff claims have been withheld and should have resolved the instant dispute.

Nevertheless, Plaintiff now seeks sanctions against CMFG because CMFG did not provide Plaintiff with screenshots of its internal administration systems before Plaintiff requested them. Plaintiff's arguments overlook that Plaintiff never requested access to CMFG's internal systems in written discovery. Instead, Plaintiff listed "CMFG's systems for gathering and maintaining information pertaining to CMFG-issued life insurance policies, including information pertaining to internal and external communications," as a topic for CMFG's 30(b)(6) witnesses to testify to at deposition. CMFG designated and prepared a witness to testify to that topic at the 30(b)(6) deposition but ultimately agreed to postpone the deposition to allow Plaintiff's counsel to review the screenshots of CMFG's internal systems in advance. Because CMFG complied with its

Hon. Jessica G. L. Clarke
Page 4

discovery obligations and made every reasonable effort to resolve the instant dispute after Plaintiff raised it, the Court should deny Plaintiff's request for sanctions.

**Fraud Alert.** The fraud alert that CMFG produced approximately four months ago is the only fraud alert that was entered on the policy, and the screenshots of CMFG's internal system demonstrate that it is also the fraud alert that was made available to CMFG's call center representatives.

The fraud alert that CMFG produced is approximately one-page long and states, inter alia, as follows:

> This policy is current being reviewed by SIU and Underwriting. While the review is ongoing, please adhere to the following guidelines:
>
> - Speak <u>only</u> with the Owner or POA on file
> - Do <u>not</u> complete any requests over the phone. Instead offer to mail forms to the address of record
> - Unless otherwise note, you may accept payments on this policy….

The fraud alert goes on to notify the reader that Ben Jorgensen or Jake Brown, both of whom are managers in CMFG's customer care department, with any questions.

Instead of requiring CMFG's call center representatives to read the fraud alert in its entirety if and when they fielded a call on the policy, the system available to CMFG's call center representatives included the following summary of the fraud alert:

> This policy is under review. Do not speak with anyone other than the Owner or POA on file. Please transfer call to a Senior for handling. Seniors, please look up policy in WASP for servicing instructions.

The system also notes the date and time that the fraud alert was entered, and the person who entered the fraud alert. Neither of the witnesses whom Plaintiff's counsel deposed entered the alert, and CMFG's 30(b)(6) witness regarding CMFG's investigation of the policy was prepared to testify as to the basis for the fraud alert at the 30(b)(6) deposition that was scheduled for January 9, 2024, which was postponed due to the instant dispute.

Accordingly, contrary to Plaintiff's argument, CMFG disclosed the only fraud alert that was entered on the policy.

**Payment History and Call Information.** Prior to the January 4, 2024 depositions of CMFG's call center representatives, CMFG produced a log of all premiums paid on the policy[1] and copies of all call recordings regarding the policy. Those recordings included the only calls

---

[1] Plaintiff also produced redacted copies of her bank account records, which confirm that Plaintiff paid all premiums on the policy and the dates that the premiums were paid.

Hon. Jessica G. L. Clarke
Page 5

that the two witnesses participated in. Accordingly, Plaintiff's counsel had recordings of the witnesses' only involvement with respect to the policy at the time of their depositions, and counsel questioned the witnesses regarding the same.

Because the witnesses' testified that CMFG maintains internal systems that track premium payments and calls regarding a policy, Plaintiff's counsel requested screenshots of those systems following the depositions. CMFG has since produced the requested screenshots, which confirm that the witnesses were not involved with the policy outside of the recorded calls that the witnesses testified about.

**No Basis for Sanctions.** Because there is no disputing that Plaintiff never served written discovery regarding CMFG's internal administration systems, Plaintiff appears to seek sanctions against CMFG on the basis that CMFG violated Rule 26(a) of the Federal Rules of Civil Procedure. Plaintiff is wrong.

Rule 26(a) requires a party to provide a copy or a description by category and location of all documents, electronically stored information, and tangible things that the party has in its possession, custody, or control and may use to support its claims or defenses. Here, CMFG did exactly what Rule 26(a) requires—it produced copies of the fraud alert, the payment log, and all call recordings in advance of the call center representatives' depositions.

Plaintiff's argument that CMFG violated Rule 26(a) places form over substance. That is, Plaintiff takes issue with the fact that CMFG produced records instead of providing Plaintiff with access to its internal administration systems. But Rule 26(a) did not require CMFG to provide Plaintiff, an individual whom CMFG claims is involved with a ring of insurance fraudsters, with access to internal administration systems, nor did Plaintiff request access to the same until January 4, 2024. When Plaintiff requested such access, CMFG offered a reasonable compromise—screenshots of the internal systems as they relate to the policy. CMFG's actions are not sanctionable and instead serve as an example of how discovery disputes are to be resolved pursuant to the Local Rules and this Court's rules.

Because CMFG acted at all times consistent with the Federal Rules of Civil Procedure, the Local Rules, and this Court's rules and orders, this Court should deny Plaintiff's request for sanctions against CMFG.

Respectfully submitted,

By:   */s/ Eyal Dror*
Eyal Dror
TRIEF & OLK
750 Third Avenue, Suite 2902
New York, New York 10017
Tel: (212) 486-6060
Email: edror@triefandolk.com

*Attorneys for Plaintiff*

By:   /s/ Franziska R. Mangot
Franziska R. Mangot (*pro hac vice*)
Faegre Drinker Biddle & Reath LLP
600 Campus Drive, Floor 2
Florham Park, New Jersey 07932
Tel.: (973) 549-7000
Franziska.Mangot@faegredrinker.com

*Attorneys for Defendant/Counter-Plaintiff CMFG Life Insurance Company*

Per the parties' agreement, the deadline for fact discovery is EXTENDED to **February 9, 2024**. CMFG shall produce the relevant data from its systems, as referenced herein, no later than **January 26, 2023**. The Court will address the issue of sanctions at the conference scheduled for January 24, 2024. *See* ECF No. 38. The post-discovery joint status letter is due **February 16, 2024**.

The Clerk of Court is directed to terminate ECF No. 57.

SO ORDERED.

*Jessica Clarke* (signature)

JESSICA G. L. CLARKE
United States District Judge

Dated: January 16, 2024